Reginald **MICHAUD,**
Plaintiff, Appellant,

v.

Kenneth **MICHAUD, et al.,**
Defendants, Appellees.

No. 90–1411.

United States Court of Appeals,
First Circuit.

Heard April 3, 1991.
Decided May 6, 1991.

78

David A. Ross with whom Ross and Ross, Manchester, N.H., was on brief, for plaintiff, appellant.

Paul F. Macri with whom Jeffrey Rosenblatt and Berman, Simmons & Goldberg, P.A., Lewiston, Me., were on brief, for defendants, appellees.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and SELYA, Circuit Judge.

1. We understand that plaintiff Reginald Michaud is in no way related to the defendant Kenneth Michaud.

LEVIN H. CAMPBELL, Circuit Judge.

Plaintiff Reginald Michaud appeals from the district court's dismissal of his action after he refused to proceed with a settlement approved by his attorney and ordered by the court.[1] Alleging that the defendants, police officers of the Town of Fort Kent, Maine, had subjected him to harassment, verbal abuse and beatings on or about May 26, 1982, plaintiff in 1983 filed this action under 42 U.S.C. § 1983.[2] The case was thereupon called for trial before a jury on several occasions, but was continued because of plaintiff's unavailability, caused in part by his brushes with the law in several states. These led, at certain times, to his detention out of state and also to the threat of arrest in various venues including Maine.

The most recent trial date was set in July 1989, before a visiting judge. At this time, defendants moved to dismiss based on the plaintiff's failure to prosecute, his continued unavailability for trial, and the allegedly frivolous and fraudulent nature of the lawsuit. (Defendants' attorney's affidavit reported Michaud's former wife as stating that he had fabricated his bruises and the allegations of beatings.) Defendants' motion to dismiss was heard by the court during a telephone conference on July 5, 1989. However, before the court could rule on the dismissal motion, attorney for plaintiff, Murrough O'Brien, advised the court on July 6, 1989 that Michaud had finally agreed to settle the case for $3,000. The same day, the court entered an order dismissing the action without costs and "without prejudice to the right, upon good cause shown within sixty (60) days, to reopen the action if settlement is not consummated."

On August 21, 1989, the court received a lengthy, somewhat incoherent, handwritten letter from plaintiff himself, reporting that his attorney "no longer wishes to represent me or my interests if indeed he ever did."

2. The Town of Fort Kent, which was one of the original defendants, filed a motion for summary judgment in July 1986. The motion was granted by the court in October 1987.

The letter and accompanying materials asked for no specific relief, but stated "please accept this as a motion in my civil case." The letter mentioned prior lawsuits and jailings; criticized the legal system, in general, and his lawyer, in particular, for not locating him and proceeding with his case; and asked, "How can my case be dismissed when I have never received relief either by trial or proper settlement?" The court indicated it would treat the letter as a motion to reopen. On August 24, 1989, defendants filed an objection to reopening. In this, defendants asserted that on July 6, 1989, Attorney O'Brien had confirmed that plaintiff had agreed to accept defendants' long-standing settlement offer of $3,000, and that on July 14 defendants had mailed to Attorney O'Brien a check for $3,000 payable to the order of plaintiff and his attorney. Defendants iterated that they had been "ready again in July to try this six-year old case." When they learned of plaintiff's acceptance of their settlement offer, they "cancelled all their trial plans and preparations and released all their witnesses." At this time, defendants continued, plaintiff was being held in jail by New Hampshire authorities awaiting extradition to Pennsylvania. Defendants also alleged plaintiff had unserved jail time in Maine and was a fugitive in Connecticut as well as Pennsylvania. They objected to any trial in his absence, asserting that his deposition "is brim full of lies which need to be confronted by cross-examination of a live plaintiff at trial."

By letter of December 12, 1989, addressed to the visiting judge who had issued the settlement order, Attorney O'Brien confirmed that on July 6 he had transmitted the $3,000 settlement offer to plaintiff in a telephone call, plaintiff being then incarcerated in Concord, New Hampshire, and that plaintiff had then "agreed to the figure proposed." On July 26, O'Brien continued, plaintiff called him and repudiated his earlier offer to settle, and refused to accept the tendered draft and execute the settlement documents. In an accompanying copy of a letter dated August 2 from O'Brien to plaintiff, O'Brien noted that plaintiff had said his original decision to settle was flawed as he was withdrawing from drugs at the time of acceptance, a factor he did not then communicate to counsel. Mr. O'Brien advised plaintiff that he had the right to reopen the case for good cause shown, and urged him to act within the 60–day period (i.e., by September 4, 1989) if he wished to attempt to reopen. Mr. O'Brien concluded his letter to plaintiff by stating that he did not wish to continue as plaintiff's counsel in the matter and that plaintiff must act on his own.

On March 28, 1990, the regularly assigned district judge called a conference of counsel in his chambers. Present were defendants' attorney and Mr. O'Brien. The latter represented, "[t]here is no dispute" that his client had agreed on July 6 to settle for $3,000. By July 26, however, plaintiff notified O'Brien of his repudiation of the settlement, alleging that on July 6 he had been in the process of withdrawing from drugs and was not then in his right mind, or had lacked the capacity to settle the case. Mr. O'Brien also represented, in response to the court's inquiry, that Michaud was still in jail, in New Hampshire, awaiting trial, with outstanding detainers from Pennsylvania and Connecticut. O'Brien also said that Michaud was a fugitive from Maine, where he faced an unserved five-day sentence.

The district court thereupon made a finding that Michaud "has agreed to a settlement in the case." The court then entered an order allowing the plaintiff two weeks to complete the $3,000 settlement. If plaintiff failed to do so, the court indicated it would dismiss the case with prejudice.

On April 3, 1990, the court received a letter from Michaud dated March 30, 1990, protesting the court's requirement to settle. Michaud stated in the letter that when O'Brien had offered him the $3,000 settlement stating that he could have the check by "morning," Michaud had told O'Brien, "Yes, I am tired and sick of this ordeal but 3,000 was not sufficient, as I'd spent ten times that amount with the various aspects of this injustice." Michaud also stated in the letter, "I simply implored him to ask

for considerably more money if they wanted my release."

Michaud did not complete the $3,000 settlement as provided in the court's order. Accordingly, after the two weeks had passed without action, the court dismissed the case with prejudice on April 26, 1990. Plaintiff now appeals from the dismissal, being represented on appeal by a different attorney.

On appeal, plaintiff argues that the district court erred in ordering acceptance of the settlement where plaintiff was not present at the in-chambers hearing, where testimony was not taken with regard to his authorization of the settlement, and the court acted solely on the basis of the settlement counsel's representations.

We commence with the question of whether O'Brien was authorized to enter into a settlement. We have previously held that an attorney, merely by virtue of his employment, lacks authority to compromise, *Luis C. Forteza e Hijos, Inc. v. Mills*, 534 F.2d 415, 418 (1st Cir.1976) (citing cases), because the decision to settle is the client's to make, not the attorney's. *United States v. Beebe*, 180 U.S. 343, 352, 21 S.Ct. 371, 374, 45 L.Ed. 563 (1901). However, an attorney may make a binding compromise on behalf of his client if the client has authorized him to do so. *Garabedian v. Allstates Engineering Co.*, 811 F.2d 802, 803 (3d Cir.1987). While there is a presumption that a settlement entered into by an attorney has been authorized by the attorney's client, rebuttal of the presumption renders any purported settlement ineffective. *Id.*[3]

Applying these principles here, if it were adequately established that Michaud authorized Attorney O'Brien to settle on July 6, the settlement would be binding and Michaud's later repudiation ineffective. The question boils down to whether the district court's finding to this effect can stand

where based exclusively on the representation of Michaud's former counsel, Michaud himself being neither present nor invited to speak to the authorization issue.

The district court was aware of the need to determine whether Michaud had authorized the July 6, 1989, settlement. It inquired carefully into the events of the settlement at the meeting with counsel, and on the basis of Attorney O'Brien's representations that "There is no dispute," the court expressly found that Michaud "has agreed to a settlement in this case."

The problem with this finding, as Michaud now contends, is that it was made without Michaud's testimony or any prior notice to him that the question of his authorization was about to be determined and that his input would be welcome.

Defendants argue that since an attorney has presumptive authority to settle a case, and since a settlement had been agreed to by counsel and was reflected in the July, 1989, order, Michaud acquired the burden of establishing that his attorney lacked authority. This, defendants say, he has never met. Thus, while Michaud's letter of August 26, 1989 indicated profound dissatisfaction with the settlement and with his attorney's representation, and was treated as a motion to reopen, it nowhere claimed specifically that Michaud had not, in fact, authorized O'Brien to settle on July 6. It was only after the March 28, 1990, in-chambers conference with counsel—following the court's ruling that Michaud comply with the purported settlement—that Michaud wrote a letter to the court intimating that he had never actually authorized O'Brien to settle.

It is tempting on these facts to affirm the district court's actions. Given Michaud's continued unavailability at the time of the chambers conference on March 28, 1990, and his former attorney's express

---

**3.** While, like several other circuits, we here apply federal law to the issue of an attorney's authority to settle a civil action brought under federal law, e.g. *Fennel v. TLB Kent Co.*, 865 F.2d 498 (2d Cir.1989); *see Furtado v. Bishop*, 604 F.2d 80, 97 (1st Cir.1979), *cert. denied*, 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980),

we note that under Maine law we would apparently reach a similar result. *Perkins v. Philbrick*, 443 A.2d 73 (Me.1982) (attorney lacks power to compromise and settle or release and discharge his client's claim without specific authorization).

representations that he had been authorized to settle, one can understand the impatience of the court.

■ But given Michaud's request to reopen the settlement, we conclude that error was committed in confirming the settlement without first offering to Michaud a reasonable opportunity to be heard on the issue of whether or not he had originally authorized Mr. O'Brien to settle.

■ It is apparent from Michaud's August 26, 1989, letter to the court, and from Attorney O'Brien's subsequent letter to the visiting judge, that by the time of the lobby conference on March 28, 1990, O'Brien had informed Michaud that O'Brien did not wish to continue as Michaud's counsel and that Michaud must act on his own. Profound distrust and dissatisfaction clearly reigned on both sides. Under these circumstances, we do not believe that O'Brien's statement as to what occurred could bind Michaud, given especially the latter's prompt denial, in his March 30, 1990, letter, of ever having authorized a settlement. In circumstances where a former attorney and his client dispute the giving of authority, courts generally require the holding of an evidentiary hearing on the question of authorization. *See Garabedian*, 811 F.2d at 803–804. After such a hearing, of course, the court can resolve any conflict in the testimony; it may, for example, disbelieve the client. But such a determination cannot be made without first giving the client a fair opportunity to have his say. *Id.*

Circumstances here, to be sure, are further clouded by two problems: (1) Michaud did not make it clear prior to the March 28, 1990, lobby conference that he denied having authorized the settlement; (2) Michaud was in jail, and, therefore, not readily available, possibly rendering his appearance impossible.

As for (1), however, Michaud was never informed that the issue of authorization was about to be determined and that he should appear. When Michaud learned that the settlement would be enforced, he immediately wrote the court (on March 30, two days following the lobby conference) to deny having granted O'Brien authority.

Without his having been offered any prior opportunity to make his views on the issue of authority known, we find it hard to fault him for not speaking out sooner on that subject.

■ As for Michaud's unavailability because of imprisonment, this is a more difficult matter. It is within the sound discretion of the district court whether to order state authorities to bring a prisoner before the court for purposes of pursuing a civil action commenced by the prisoner. *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir.1987); *Holt v. Pitts*, 619 F.2d 558, 561 (6th Cir.1980). Among the many factors to be considered are the burden on the state, the existence of other alternatives (such as a continuance until the prisoner is released), the diligence of the prisoner, and the substantiality of the litigation. *Price v. Johnston*, 334 U.S. 266, 284–85, 68 S.Ct. 1049, 1059–60, 92 L.Ed. 1356 (1948). *See also Poole*, 819 F.2d at 1028; *Stone v. Morris*, 546 F.2d 730, 735–36 (7th Cir.1976). Under some circumstances, a prisoner may be forced to forego the right to appear personally in civil lawsuits. *Poole*, 819 F.2d at 1028; *Stone*, 546 F.2d at 735. In such event, however, a court will try to fashion other procedures enabling him to go forward. *Poole, supra,* at 1029. Here, it is premature for us to face this question, since the district court itself never reached it. Had the court called a hearing on the settlement issue, or issued a show cause order—notifying Michaud either directly or through Mr. O'Brien—and had Michaud indicated he wished to appear but was incarcerated, the court would then have had to determine whether to have Michaud brought before it by process, order his deposition taken, continue the matter, or proceed otherwise. Its judgment on this score would depend, among other things, on its evaluation of Michaud's good faith and diligence, and various other factors. We would give great deference to the district court's discretion in handling such a matter.

Here, however, the district court afforded Michaud no opportunity to be heard, nor did it tender some reasonable alternative in

lieu thereof (assuming the circumstances would have justified this, a matter on which we make no ruling at this time). We hold, therefore, that the court acted prematurely in deciding the issue of authorization on the basis solely of counsel's remarks, without more.

 In reaching this result, we are aware of defendants' alternative argument that we should affirm the dismissal on the grounds of Michaud's failure to prosecute. Defendants emphasize the antiquity of the case, Michaud's prior failures to appear, and other factors, including his purported perjury. Michaud's alleged defaults along these lines must, however, be evaluated more carefully than we can do on this record. Whether his earlier failures to appear coupled with his recent actions reflect such a lack of diligence as to warrant dismissal for failure to prosecute requires a more complete assembly of the facts and circumstances. *Compare Holt v. Pitts*, 619 F.2d at 562–563 (reversing dismissal for failure to prosecute where prisoner had been acting in apparent good faith). The district court made no findings on this aspect of the case nor did it dismiss for these reasons. In virtually all cases it is for the district court rather than this court to determine, as an initial matter, whether a plaintiff was so derelict that dismissal for failure to prosecute is proper. This is not to say that dismissal on these or other grounds may not be justified upon further inquiry by the district court. We add, of course, that if plaintiff is offered an opportunity to testify on the authorization question, or on other material matters, and fails unreasonably to appear, or otherwise engages in dilatory or improper actions, the court would likewise be free to take such action as it deems fit.

We simply hold that the court erred in finding that plaintiff authorized Mr. O'Brien to settle without first tendering to plaintiff a reasonable opportunity to testify on that issue, or to present his version in some other appropriate way, assuming the circumstances were such that another avenue would have been appropriate.

*Vacated and remanded for proceedings not inconsistent herewith.*