USCA1 Opinion

 

 United States Court of Appeals For the First CircuitNo. 98-1718 MARIE M. MALAVE, Plaintiff, Appellant, v. CARNEY HOSPITAL, ET AL., Defendants, Appellees. APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] Before Selya, Circuit Judge,  Bownes, Senior Circuit Judge,  and Lipez, Circuit Judge.  Robert LeRoux Hernandez for appellant. Michael F.X. Dolan, Jr., with whom Robert H. Morsilli andMurphy, Hesse, Toomey & Lehane were on brief, for appellees.March 9, 1999   SELYA, Circuit Judge. This appeal stems from adiscrimination suit filed by plaintiff-appellant Marie M. Malaveagainst her quondam employer, Carney Hospital (the Hospital). Inthe underlying case, Malave alleged disparate treatment on thebasis of disability, race, and national origin. In the midst ofdiscovery, the opposing lawyers agreed to a $15,000 settlement. Nevertheless, when the Hospital's counsel forwarded a proposedsettlement agreement, the appellant refused to execute it, claimingthat she had never authorized her attorney to settle the case forless than $30,000. The Hospital asked the district court to enforce thepurported settlement. The court granted the motion without holdingan evidentiary hearing. This appeal followed. A party to a settlement agreement may seek to enforce theagreement's terms when the other party reneges. If, at the time ofthe claimed breach, the court case already has been dismissed, theaggrieved party may bring an independent action for breach ofcontract. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375,381-82 (1994). If, however, the settlement collapses before theoriginal suit is dismissed, the party who seeks to keep thesettlement intact may file a motion for enforcement. See UnitedStates v. Hardage, 982 F.2d 1491, 1496 (10th Cir. 1993) ("A trialcourt has the power to summarily enforce a settlement agreemententered into by the litigants while the litigation is pendingbefore it.") (citations omitted); Mathewson Corp. v. Allied MarineIndus., Inc., 827 F.2d 850, 852-53 (1st Cir. 1987) (similar). Ina federal court, such a motion at least when the underlying causeof action is federal in nature is determined in accordance withfederal law. See Michaud v. Michaud, 932 F.2d 77, 80 n.3 (1st Cir.1991); Fennell v. TLB Kent Co., 865 F.2d 498, 501 (2d Cir. 1989);Mid-South Towing Co. v. HarWin, Inc., 733 F.2d 386, 389 (5th Cir.1984); Gamewell Mfg., Inc. v. HVAC Supply, Inc., 715 F.2d 112, 115-16 (4th Cir. 1983). As a general rule, a trial court may not summarilyenforce a purported settlement agreement if there is a genuinelydisputed question of material fact regarding the existence or termsof that agreement. In such circumstances, the cases consentientlyhold that the court instead must take evidence to resolve thecontested issues of fact. See Murchison v. Grand Cypress HotelCorp., 13 F.3d 1483, 1486 (11th Cir. 1994); TCBY Sys., Inc. v. EBGAssoc., Inc., 2 F.3d 288, 291 (8th Cir. 1993) (per curiam);Hardage, 982 F.2d at 1496; Bamerilease Capital Corp. v. Nearburg,958 F.2d 150, 153 (6th Cir. 1992); Tiernan v. Devoe, 923 F.2d 1024,1031 (3d Cir. 1991); Petty v. Timken Corp., 849 F.2d 130, 132 (4thCir. 1988); Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987); Mid-South Towing, 733 F.2d at 390; Autera v. Robinson, 419 F.2d 1197,1203 (D.C. Cir. 1969). It is against this backdrop that we assessthe record here. When the Hospital filed its motion to enforce, ittendered an unsigned copy of a draft settlement agreement and itscounsel's affidavit explaining its version of the attendantcircumstances. The lawyer, Michael F.X. Dolan, Jr., recounted"back and forth" conversations with his opposite number, MatthewCobb, during which Cobb made a settlement demand of $15,000. Dolanstated that he agreed to pay the demanded sum in return for astipulation of dismissal and a general release. He thentransmitted a proposed agreement to Cobb both by facsimile and bymail. Though the agreement seems prolix and covers a multitude ofsubjects (e.g., a waiver of any right to reemployment; a covenantnot to comment on the payment or to speak ill of the releasees),the Hospital takes the position that it was boilerplate. There is no way that these materials, standing alone,would justify summarily enforcing a settlement agreement. Evidencesupplied by one side to the dispute, especially nontestimonialevidence not subject to cross-examination, ordinarily will notsuffice to ground enforcement of an ostensible settlement. SeeHardage, 982 F.2d at 1497; Callie, 829 F.2d at 891. But thedistrict court had before it more than this one submission. Fourdays after the Hospital served its motion, Cobb filed a response. It is evident from even a cursory glance that this pleading did notpurport to represent the appellant's views, protect her interests,or advance her position. To the contrary, its contents mademanifest that Cobb (who wished to consummate the settlement) andhis client (who wished the litigation to proceed) were at swords'point. Even though the document that Cobb filed declared that hehad received authority from Malave to effectuate a $15,000settlement, it went on to state that Malave's son, on Malave'sbehalf, had called Cobb within a day or two to make sure that Cobbunderstood that he did not have authority to settle the case forthat sum. This recitation ought to have alerted the district courtthat something had gone awry, and that the extent of Cobb'sauthority was open to question. We cannot conceive of a morefundamental dispute concerning the existence vel non of asettlement agreement than occurs when a litigant and her lawyerwrangle over whether the former imbued the latter with authority tosettle. Moreover, this was not an instance in which the existenceof the settlement had somehow been conceded previously by bothparties or in which the court had been able to acquire personalknowledge through, for example, a settlement conference or ahearing. See Murchison, 13 F.3d at 1487; Petty, 849 F.2d at 132-33; Autera, 419 F.2d at 1200. Prudence dictates the a trial court,confronted with so tenebrous a record, should withhold summaryenforcement and instead probe for better evidence on which to basean informed determination as to whether the parties had in factreached a binding agreement. This is all the more true where, ashere, the motion papers clearly contemplated that an evidentiaryhearing would be held, and the response to the motion explicitlyrequested such a hearing. Setting the nature and quality of the requisite evidenceto one side, the Hospital argues that the purported settlement muststand because it (the Hospital) relied on Cobb's representationsabout his authority. In mounting this argument, the Hospital drawsupon the doctrine of apparent authority, under which third partieswho detrimentally rely on an agent's unauthorized representationssometimes may hold the principal to the consequences of suchreliance. See, e.g., Veranda Beach Club Ltd. Partnership v.Western Surety Co., 936 F.2d 1364, 1377 (1st Cir. 1991). Assuggested by our earlier analysis, the doctrine of apparentauthority may not be invoked in these purlieus. Under hoaryprinciples of federal common law, a general retainer, standingalone, does not permit an unauthorized attorney to settle claims onhis client's behalf. See United States v. Beebe, 180 U.S. 343, 352(1901); Michaud, 932 F.2d at 80; see also Holker v. Parker, 11 U.S.(7 Cranch) 436, 452 (1813). This rule rests on the salutary proposition that thedecision to settle litigation belongs to the client, not thelawyer. See Michaud, 932 F.2d at 80; Fennell, 865 F.2d at 501-02. The rule logically implies that a settlement agreement entered intoby an attorney is ineffective if the attorney did not possessactual authority to bind the client, and the cases so hold. SeeMorgan v. South Bend Community Sch. Corp., 797 F.2d 471, 478 (7thCir. 1986); Luis C. Forteza & Hijos, Inc. v. Mills, 534 F.2d 415,418 (1st Cir. 1976); see also Garabedian v. Allstates Eng'g Co.,811 F.2d 802, 803 (3d Cir. 1987) (per curiam) (tacitly adoptingactual authority requirement). Since actual authority is thebarometer and the evidence before the district court did not compela conclusion that Cobb possessed actual authority to conclude asettlement, the Hospital's motion for summary enforcement could notbe granted. See Millner v. Norfolk & W. Ry. Co., 643 F.2d 1005,1009-10 (4th Cir. 1981) (holding that the existence of a disputeover an attorney's authority to settle renders summary enforcementinappropriate). There is also the Hospital's contention, emphasized atoral argument, that we should overlook all else because there hasbeen an accord and satisfaction. In its most familiar iteration,accord and satisfaction envisions that the parties will settle adispute on terms requiring payment by one party of a sum greaterthan that which he admits he owed and receipt by the other party ofa sum less than that which she claims is due, thereby extinguishingthe underlying claim. See, e.g., Cadle Co. v. Hayes, 116 F.3d 957,962 (1st Cir. 1997). The Hospital attempts to invoke the doctrineon the basis nowhere reflected in the district court record that Malave (or Cobb, on her behalf) accepted and cashed a checkfor $15,000 that constituted the consideration for the purportedsettlement. This initiative fails for two reasons. First, in this context, an accord and satisfactionrequires a voluntary, mutually assented to exchange of money for arelease. See id. There is absolutely no evidence of voluntarinessor mutuality here, and what little we know points the other way. As the Hospital itself admits in its brief, it sent a check toCobb, for Malave, pursuant to the instructions set forth in thedistrict court's enforcement order. That order was the functionalequivalent of a mandatory injunction. These circumstances hardlybespeak either voluntariness or mutuality. The second basis for rejecting the Hospital's accord andsatisfaction argument relates to the bedrock rule of appellatepractice that, except in the most extraordinary circumstances (notpresent here), matters not raised in the trial court cannot behawked for the first time on appeal. See National Ass'n of Soc.Workers v. Harwood, 69 F.3d 622, 627 (1st Cir. 1995); TeamstersUnion, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1stCir. 1992); McCoy v. Massachusetts Inst. of Tech., 950 F.2d 13, 22(1st Cir. 1991). The Hospital's attempt to raise an accord andsatisfaction defense offends this rule. The fact that the purported accord and satisfaction tookplace after the district court entered the enforcement order doesnot relieve a litigant who wishes to rely on it of the obligationto bring that matter first to the trial court's attention. Accordand satisfaction is a fact-based defense and one important reasonfor the rule requiring litigants to broach matters initially withthe trial court is that adherence to it allows the parties todevelop the relevant facts. In turn, this gives a court whichpossesses a factfinding capability an opportunity to resolve newissues in an informed manner a praxis that provides invaluableassistance when the appellate court thereafter performs itsreviewing function. Here, there are no facts in the recordconcerning the ostensible accord and satisfaction merelyassertions. We cannot intelligently decide cases on so problematica basis. We need go no further. Summary enforcement of arm's-length settlements is a useful device to hold litigants to theirword, but the procedure ought to be reserved for situations inwhich a struck bargain is admitted or proved, and the basis fornonperformance is insubstantial. Thus, when a district courtpurposes summarily to enforce a settlement, it first must ascertainwhether or not a binding agreement in fact existed. The evidencebefore the district court in this case raised too many unansweredquestions as to the existence vel non of such an agreement. Therefore, the court ought not to have granted the Hospital'smotion to enforce the purported settlement without taking evidenceand resolving the disputed issues of material fact. The order enforcing the putative settlement is vacatedand the case is remanded to the district court for furtherproceedings.