David I. SCOTT, Plaintiff,

v.

BURNS INTERNATIONAL SECURITY
SERVICES, INC., et al.,
Defendants.

No. Civ. 99–00925 ACK.

United States District Court,
D. Hawai'i.

April 11, 2001.

David I. Scott, Pearl City, HI, plaintiff pro se.

Dennis W. Potts, Honolulu, HI, Barry Bradley, Melinda Manley, Bradley & Gme-

lich, Glendale, CA, for Borg Warner Protective Services dba Burns International Security Services, Inc., defendant.

*ORDER DENYING PLAINTIFF'S MOTION TO DISMISS STIPULATION OF THE PARTIES TO STAY FEDERAL ACTION PENDING COMPLETION OF BINDING ARBITRATION AND GRANTING DEFENDANT'S MOTION TO CONFIRM ARBITRATION AWARD*

KAY, District Judge.

## BACKGROUND

This case arises out of the employment of David I. Scott ("Plaintiff") by Borg Warner Protective Services dba Burns International Security Services, Inc. ("Defendant"). Plaintiff was hired by Defendant on December 14, 1995. On December 19, 1995, Plaintiff signed a Pre–Dispute Resolution Agreement with Defendant. Plaintiff alleges that in September, 1997, he was constructively discharged by Defendant in violation of the Americans with Disabilities Act ("ADA").

On June 19, 1998 Plaintiff filed a formal complaint alleging employment discrimination under Title VII with the EEOC. Plaintiff was issued a Right to Sue Letter on September 30, 1999. Plaintiff filed the instant suit on December 30, 1999 alleging violations of Title VII, the Rehabilitation Act, the ADA, and H.R.S. § 378. Defendant was served with the Complaint on February 14, 2000. On April 14, 2000, the parties stipulated to a stay of the federal action pending completion of binding arbitration pursuant to a Pre–Dispute Resolution Agreement. The stipulation was approved by Order of the Court. On April 12, 2000, the parties jointly selected the Honorable Robert R. Devich to act as arbitrator. *See* Affidavit of Melinda Manley in Support of Motion to Confirm Arbitration Award, filed November 29, 2000. The arbitration hearing was set for October 11, 2000.

Five months later, on September 15, 2000, Plaintiff substituted himself *pro se* as counsel of record. On September 28, 2000, less than two weeks before the scheduled arbitration hearing, Plaintiff filed a Non–Hearing Motion to Lift Stay and a Motion to Stay Arbitration on the eve of the scheduled arbitration hearing. In his original Motion, Plaintiff argued that the attorney who signed and filed the stay was not representing him for purposes of this matter and therefore had no authority to sign the stipulation. Plaintiff additionally argued that the request for arbitration was untimely. Defendant filed an Objection to Plaintiff's Motions on October 4, 2000. On October 6, 2000, the Court denied Plaintiff's Motion to Lift Stay and Motion to Stay Arbitration ("October Order"). On the same day, Plaintiff filed a Motion for Reconsideration. The Court denied the Motion for Reconsideration on October 10, 2000. On October 10, 2000 Plaintiff filed a second Motion for Reconsideration which the Court denied the same day.

The Arbitration went forward on October 11, 2000 in front of the Honorable Robert Devich, Justice Retired. *See* Ex. A to Defendant's Motion to Confirm Arbitration Award (hereinafter "Arbitration Award"). Plaintiff appeared telephonically and informed Justice Devich that he would not appear for the arbitration. *See* Transcript of Arbitration Hearing, filed November 13, 2000 at 24–25 (hereinafter "Transcript"); Arbitration Award at 1. After hearing Defendant's offer of proof, Justice Devich found that Plaintiff could not make out a prima facie case under the ADA because he failed to show that he was disabled under the ADA, and failed to establish that he was able to perform the essential functions of his job with or without reasonable accommodation. *See* Arbitration Award at 2.

After the arbitration, on October 23, 2000 and October 30, 2000, Plaintiff filed Addendum to Memorandum in Support of Hearing Motion to Lift Stay apparently attempting to amend the second motion for reconsideration that the Court denied on October 10, 2000. As Plaintiff is *pro se*, and appeared to present new arguments in the amendments, the Court construed the amendments to be a third Motion for Reconsideration and directed Defendant to file an Opposition. Defendant filed an Opposition on November 9, 2000 and Plaintiff filed a Reply on November 17, 2000. The Court denied Plaintiff's third motion for reconsideration on January 4, 2001 ("January Order").

On November 29, 2000, Defendant filed a Motion to Confirm Arbitration Award and an Affidavit in support on the same day. On December 4, 2000, Plaintiff filed an Opposition to Defendant's Motion to Confirm Arbitration Award and a Motion to Dismiss Stipulation of the Parties to Stay Federal Action Pending completion of Binding Arbitration. On December 6, 2000, Plaintiff filed a Supplement to his Motion. On January 9, 2001, Defendant filed an Opposition. Plaintiff filed a Reply on January 29, 2001. A Hearing on the Motions was held February 1, 2001 at 10:00 a.m. at which time the Court requested the parties further brief the question of whether or not the Court had jurisdiction under the Federal Arbitration Act ("FAA") to stay the Federal Action. Upon reviewing the parties briefs, the Court stayed its decision pending the Supreme Court's ruling on *Circuit City Stores Inc. v. Adams,* 194 F.3d 1070 (9th Cir.1999)

cert. granted, 529 U.S. 1129, 120 S.Ct. 2004, 146 L.Ed.2d 955 (May 22, 2000).

### DISCUSSION

The Court will address both parties' Motions in this Order as the Motions are based on the same facts and argue the same points of law. The Court will first address Plaintiff's Motion to Dismiss the Stipulation.[1]

### I. *MOTION TO DISMISS PARTIES' STIPULATION*

The Court notes that while Plaintiff has framed his argument slightly differently this time around, in effect this is Plaintiff's fourth motion for reconsideration. As such it is an improper vehicle to present new arguments to this Court. *See Publishers Resource, Inc. v. Walker–Davis Publications, Inc.,* 762 F.2d 557, 561 (7th Cir.1985); *Stein v. United Artists Corp.,* 691 F.2d 885, 898 (9th Cir.1982). Plaintiff ought to have presented all legal arguments in his original Motion to Lift Stay, however, as Plaintiff is *pro se* this Court will continue to grant him latitude in presenting his arguments.

In this most recent Motion, Plaintiff has narrowed his arguments to two; a) Plaintiff's attorney was required to have Plaintiff's written consent in order to stipulate to arbitration, and b) the Court cannot compel Plaintiff to arbitrate his claim under the Pre–Dispute Resolution Agreement. The Court reiterates that these arguments could have been and should have been raised in the original motion, and are not appropriate at this time. Moreover, the Court finds that the stipulation is binding upon Plaintiff and that in

---

**1.** Defendant argues that Plaintiff's Motion is moot and non-justiciable as the arbitration has already taken place. Although the instant Motion is in effect Plaintiff's fourth motion for reconsideration, until the arbitration award is confirmed by this Court, the question of the validity of the agreement to arbitrate is not moot. Plaintiff's Motion requests this Court set aside the arbitration award upon a finding that the stipulation was unlawful and therefore non-binding.

light of the recent decision of the Supreme Court in *Circuit City Stores Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), the Pre–Dispute Resolution Agreement binds Plaintiff to arbitrate his claim.

## A. *THE EFFECT OF THE CIRCUIT CITY DECISION*

■ In *Circuit City* the Supreme Court reversed the Ninth Circuit and held that the Federal Arbitration Act's (FAA) coverage provision includes employment contracts and the FAA's exemption provision is limited to contracts of employment of transportation workers. Therefore, the FAA is applicable to the Pre–Dispute Resolution Agreement ("PDRA") and the stipulation to stay the federal action pursuant to the PDRA at issue in this case. Accordingly, the Court had authority to stay the federal action pursuant to § 3 of the FAA in accordance with the parties stipulation. Additionally, the *Circuit City* decision brought into doubt the Ninth Circuit holding in *Duffield v. Robertson Stephens & Co.,* 144 F.3d 1182 (9th Cir.1998) that compulsory agreements for arbitration of Title VII, and by analogy ADA, claims are unenforceable.

Just like the PDRA at issue here, the Dispute Resolution Agreement in *Circuit City* was a mandatory prerequisite to employment with Circuit City Stores and any employee who did not sign it would "no longer be eligible for employment at Circuit City." *Circuit City,* 194 F.3d at 1071. The Agreement stated that the employee agreed to settle:

> "all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for employment, employment and/or cessation of employment with Circuit City, *exclusively* by final and binding *arbitration* before a neutral Arbitrator. By way of example only, such claims include claims under federal, state, and local

statutory or common law, such as Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments to the Civil Rights Act of 1991, the Americans with Disabilities Act, the law of contract and law of tort." (emphasis in original).

*Id.* at 1071 n. 1. In finding that under the FAA this provision could be enforced, the Supreme Court stated that "there are real benefits to the enforcement of arbitration provisions." *Circuit City,* 532 U.S. 105, 121 S.Ct. 1302, 1312–13, 149 L.Ed.2d 234 (2001). Further, although the underlying dispute was a state law claim of discrimination, the Supreme Court reiterated its findings in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) and stated that "the Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law." *Id.*

This explication of the holding of *Gilmer* runs contrary to the holding of the Ninth Circuit in *Duffield.* In *Duffield* the Ninth Circuit refused to extend the holding of *Gilmer,* that compulsory arbitration agreements could be enforced under the FAA, to include arbitration of claims arising under Title VII. *See* 144 F.3d at 1195. The Ninth Circuit reasoned that allowing compulsory arbitration of Title VII claims would undermine Congress' intent to strengthen existing protections and remedies available to employees. *Id.* at 1192. Therefore, the Supreme Court's contrary statement in *Circuit City* that arbitration agreements do not contravene the policies of congressional enactments or the protections of federal law, in the context of the Court's consideration of a compulsory arbitration provision that included arbitration of Title VII claims, implicitly overrules this

holding of *Duffield. See Circuit City* at 1312–13.

Prior to *Circuit City*, the Supreme Court has signaled that the holding of *Gilmer* should be extended to allow compulsory arbitration of Title VII claims. One week after deciding *Gilmer* the Court remanded *Alford v. Dean Witter Reynolds, Inc.*, 712 F.Supp. 547 (S.D.Tex.1989), *aff'd*, 905 F.2d 104 (5th Cir.1990), *cert. granted, judgment vacated,* and *case remanded,* 500 U.S. 930, 111 S.Ct. 2050, 114 L.Ed.2d 456 (1991), for reconsideration in light of *Gilmer. Alford* was a Title VII sex discrimination and sexual harassment case, suggesting that the Supreme Court was of the opinion that *Gilmer* affected the analysis of compulsory arbitration of Title VII claims. Upon remand, the Fifth Circuit held that Title VII claims can be subjected to compulsory arbitration. *See Alford v. Dean Witter Reynolds, Inc.,* 939 F.2d 229 (5th Cir.1991).

In addition to the Fifth Circuit, the Third, Sixth, Tenth, Eleventh and D.C. Circuits have all extended the holding of *Gilmer* to enforce compulsory arbitration of Title VII claims. *See Cole v. Burns Int'l Security Services,* 105 F.3d 1465 (D.C.Cir.1997); *Seus v. John Nuveen & Co.,* 146 F.3d 175 (3rd Cir.1998); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482 (10th Cir.1994); *Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698 (11th Cir.1992); *Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305 (6th Cir. 1991). The Ninth Circuit itself determined that after *Gilmer,* an arbitration clause in an employment application, signed prior to the time the dispute arose, was enforceable to compel arbitration of a Title VII claim. *See Mago v. Shearson Lehman Hutton Inc.,* 956 F.2d 932 (9th Cir.1992).

■ In the alternative, even if *Duffield* is still good law after *Circuit City,* Plaintiff is bound by his stipulation to stay the federal action pending binding arbitration. Although Plaintiff has argued that *Duffield* prevents enforcement of the PDRA, Defendant has not motioned this Court to compel arbitration. It did not do so because the parties in this case agreed to arbitrate their claim, in accord with the PDRA, after the dispute arose and the Complaint was filed. Plaintiff authorized his attorney to go ahead with arbitration and received additional consideration for doing so, in that Defendant agreed to pay the full costs of the arbitration relieving Plaintiff of his duty to pay 50% of the costs as stated in the PDRA. Therefore, even if the PDRA were not enforceable and did not subject Plaintiff to compulsory arbitration of his claim, by consenting to arbitration and filing the stipulation staying the federal action in favor of arbitration, Plaintiff was bound and required to arbitrate his claim. *See Duffield* 144 F.3d at 1187 (stating that compulsory arbitration did not include the situation where an employee elects, after a dispute has arisen, to submit claim to arbitration, even if the underlying arbitration agreement is not enforceable); *Mago,* 956 F.2d at 935 (holding that Congress did not intend, in enacting Title VII, to preclude arbitration of claims under the Act).

## B. BINDING STIPULATION TO STAY FEDERAL ACTION IN FAVOR OF ARBITRATION

Plaintiff attempts to avoid enforcement of the stipulation by asserting that his attorney did not have authority to agree to arbitration. In earlier Motions, Plaintiff has repeatedly argued to this Court that he did not consent to his attorney's action, and was not aware of his attorney's actions. However, just as Plaintiff's legal arguments have altered during the course of his four motions for reconsideration, so has his recitation of the facts.[2] Plaintiff's earlier averments to the contrary, in find-

---

**2.** In Plaintiff's original motion to lift stay he argued that he was not represented by an

ing that Plaintiff's attorney did have authority to enter the stipulation the Court need only look to Plaintiff's own statement to the Court that he consented to arbitrate his claim. *See* Transcript of Hearing at 19:7–15, 32:11–17. Therefore, according to the Plaintiff's own statements, Plaintiff's attorney had *express* authority to enter the stipulation agreeing to stay the federal action in favor of arbitration. The Court will nonetheless consider Plaintiff's arguments to the contrary.

 Plaintiff argues that Hawaii Revised Statutes § 605–7 is controlling in this case. H.R.S. § 605–7 states that "[t]he practitioners licensed by the supreme court shall have control to judgment and execution, of all suits and defenses confided to them; provided that no practitioner shall have power to compromise, arbitrate, or settle such matters confided to the practitioner, unless upon special authority in writing from the practitioner's client." The Court disagrees that this statute is determinative. Plaintiff's original Complaint was filed in Federal Court under federal question jurisdiction. It is federal law that controls this action and not the state law of Hawaii. *See Camerican Int'l, Inc. v. L & A Juice Co., Inc.*, 1989 WL 79826 (9th Cir. July 12, 1989) ("State law provides the rule of decision on the question of an attorney's authority to bind his client to an agreement or stipulation when the action does not implicate rights and duties derived from federal law")[3]; *Michaud v. Michaud*, 932 F.2d 77, 79 (1st Cir.1991) (applying federal law to determine extent of attorney's authority to bind client to settlement); *Fennell v. TLB Kent Co.*, 865 F.2d 498, 501 (2nd Cir.1989) ("where an action is based upon federal law, the authority of an attorney to settle that action is a federal question ... [and] federal law is applicable ..."); *In re Marx*, 171 B.R. 218, 222 (Bkrtcy.N.D.Texas 1994) (applying federal law to determine the extent of an attorney's authority in federal bankruptcy court).[4] Therefore, the Court will look to federal common law to determine the extent of Plaintiff's attorney's authority to agree to arbitrate his claim.[5]

attorney for this action. After the Court rejected that argument, Plaintiff's recitation of the events leading up to the firing of his attorney demonstrate that his attorney was actively involved in representing Plaintiff in this matter. Plaintiff's own Declaration shows that Plaintiff discussed arbitration with his counsel, was aware that Defendant believed Plaintiff to be represented by counsel, was aware that preparation for arbitration was commencing, and that an arbitrator had been chosen. *See* Dec. of Plaintiff attached to Reply filed January 29, 2001 at ¶¶ 5, 9, 12, 17, 22 (hereinafter "Declaration").

**3.** The Court notes that it is not relying on this unpublished decision, pursuant to Federal Rule of Appellate Procedure 36–3.

**4.** Although it is clear that federal law controls the outcome of this case, the Court notes that, while the language of the Hawaii statute appears to be clear on its face and require express written consent of a client in order for an attorney to settle a case, thereby differentiating itself from federal law, the Hawaii Supreme Court has left open the question as to whether there are exceptions to the written authority requirement. *See Cook v. Surety Life Ins. Co.*, 79 Hawai'i 403, 903 P.2d 708, 715 (Haw.App.1995) (stating that the Hawaii Supreme Court had not determined whether apparent authority is an exception to the special written authority to settle doctrine) citing *Nelson v. Boone*, 78 Hawai'i 76, 890 P.2d 313 (1995). Additionally, at the time the stipulation was entered, Plaintiff's counsel had an agreement to arbitrate claims with Defendant signed by Plaintiff.

**5.** An attorney can bind his client to a settlement without express consent if he has apparent authority. *See Michaud*, 932 F.2d at 79; *Fennell*, 865 F.2d at 501. Additionally, the burden of proving the lack of consent is placed on the party challenging the attorney's power. Once a settlement has been entered into, a presumption is created that the attorney who enters into the settlement agreement

## C. APPLICATION OF FEDERAL COMMON LAW TO THE FACTS OF THIS CASE

■ Plaintiff argues that even if the Hawaii statute is not applicable, under federal law the stipulation is not binding absent the express consent of Plaintiff. As Plaintiff stated to the Court that he expressly consented to arbitration, the Court is unclear how Plaintiff can argue that his attorney lacked authority to stipulate to arbitration. The Court finds that Plaintiff's attorney had authority to enter the stipulation and bind Plaintiff to arbitration.

Plaintiff has repeatedly averred that he was unaware of and did not consent to the actions of his counsel. In his original motion Plaintiff claimed that he was not even represented by counsel for this action. However, Plaintiff's own Declaration shows that Plaintiff discussed arbitration with his counsel, was aware that Defendant believed Plaintiff to be represented by counsel, was aware that preparation for arbitration was commencing, and that an arbitrator had been chosen. *See* Dec. of Plaintiff attached to Reply filed January 29, 2001 at ¶¶ 5, 9, 12, 17, 22 (hereinafter "Declaration"). Plaintiff stated "subsequent to filing, T. Stephen Leong represented to Plaintiff that attorneys for defendant had notified him they had an agreement signed by Plaintiff which committed plaintiff to submit to binding arbitration in accordance with its terms." Declaration at ¶ 5. Plaintiff was informed by his attorney that Plaintiff "would be able to participate in arbitration but if arbitration was perceived as unfair, he would be able to life the stay in Federal Court." *Id.* at ¶ 9. Plaintiff was further

instructed by his attorney that "if defendants moved to enforce the arbitration provision of the contract, plaintiff would have to come up with several thousand dollars to pay half the costs of the arbitrator." *Id.* at ¶ 24. It is clear that Plaintiff was aware that preparations for the arbitration were going forward as he was instructed by his attorney "to attend an IME to be conducted by a Dr. Maruyama set for September 19, 2000" and was told that his attorney "knew by reputation the arbitration judge, and that this judge was likely to render a decision that would substantially compensate plaintiff." *Id.* at ¶¶ 17, 22. Plaintiff was also aware that Defendant had agreed to pay the costs of arbitration in exchange for Plaintiff's agreement to stipulate to arbitration. *See* Transcript of Hearing at 20:4–9. When these facts are contrasted to Plaintiff's original argument that the stipulation was not binding because he was not represented by Mr. Leong for the purposes of this complaint, it becomes obvious that Plaintiff has not been fully forthcoming with this Court.

Most importantly, upon questioning by the Court, Plaintiff stated that he told his attorney that he agreed to arbitration. *See* Transcript of Hearing at 19:7–15, 32:11–17. Plaintiff argues that he did not truly consent to arbitration because he believed that arbitration would not be binding. The Court construes this argument as a claim that Plaintiff's agreement to arbitrate was not knowing or voluntary. *See Prudential Insurance Co. or America v. Lai*, 42 F.3d 1299, 1305 (9th Cir.1994) (agreement to arbitrate Title VII disputes

had the authority to do so, and the burden to show that there was no consent to the settlement is placed on the person challenging the validity of the agreement. *See In re Artha Management, Inc.*, 91 F.3d 326, 329 (2nd Cir. 1996); *Greater Kansas City Laborers Pension Fund v. Paramount Industries, Inc.*, 829 F.2d

644, 646 (8th Cir.1987); *Edwards v. Born, Inc.*, 792 F.2d 387, 389–90 (3rd Cir.1986); *Thomas v. Colorado Trust Deed Funds, Inc.*, 366 F.2d 136, 139 (10th Cir.1966). Where the client cannot affirmatively demonstrate the lack of consent, the settlement will be enforced by the courts. *See Id.*

must be knowing); *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 762 (9th Cir.1997) (the choice to arbitrate "must be explicitly presented to the employee and the employee must explicitly agree to waive the specific right in question"). It is abundantly clear that Plaintiff's agreement to arbitrate was knowing. First, Plaintiff read and signed the separate PDRA which stated "[y]ou understand and agree that if the Company exercises its option, any dispute arbitrated will be heard solely by the arbitrator, and not by a court or agency, that the decision of the arbitrator will be final and binding on both parties...." *See* Ex. 10 to Plaintiff's Further Brief in Support, filed February 14, 2001. The PDRA was not hidden in an employee handbook but was presented separately to Plaintiff for his signature, stated that it covered "claims involving laws against discrimination whether brought under federal and/or state law," and advised "you may wish to consult an attorney prior to signing this agreement." *Id.* Comparing these circumstances to the facts of *Lai* and to *Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153, 1155 (9th Cir.1998), it is clear that by signing the PDRA, Plaintiff made a knowing agreement to arbitrate. Plaintiff was aware that by agreeing to arbitrate, he was agreeing to arbitrate in accordance with the PDRA he had signed. *See* Declaration at ¶ 9 (Plaintiff agreed to arbitrate

although he felt that the PDRA made Defendant's request for arbitration untimely). Additionally, Plaintiff's attorney stated in a Declaration of Counsel that "Plaintiff was fully informed of all developments in this case and consented to the arbitration agreement [in which Defendants agreed to pay the costs of the arbitrator]." Declaration of Counsel, filed February 8, 2001 at ¶ 8.

■ Plaintiff consented to arbitrate his claim. In exchange for Plaintiff's consent to arbitration, Defendant agreed to pay the full costs of the arbitration, thereby relieving Plaintiff of his duty to pay 50% of the costs as stated in the PDRA. *See* Transcript of Hearing at 20:4–9. Whether or not Plaintiff was made, by his attorney, to fully understand the binding nature of arbitration cannot impact upon this Court's determination of the binding nature of a properly filed stipulation.[6] Whether or not Plaintiff's attorney's recommended course of action was sound legal advice is equally irrelevant to the present motion. Plaintiff's remedy for his attorney's alleged failure to explain the consequences of that agreement is a suit for malpractice and not the reinstatement of his federal claim. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

6. Under federal law a client is held accountable for the acts and omissions of his attorney. "It is a longstanding principle in our system of representative litigation ... each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." (internal citations omitted) *Garcia v. Immigration and Naturalization*, 222 F.3d 1208, 1209 (9th Cir.2000). In *Link v. Wabash Railroad Co.*, the Supreme Court upheld a dismissal of a claim for failure to prosecute stating that there was "no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct

imposes an unjust penalty on the client ... Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *see also, Paik v. First*, 1995 WL 577677 *1 (9th Cir.1995) (refusing to vacate a dismissal of plaintiff's action where plaintiff's attorney committed gross negligence); *In re Marx*, 171 B.R. 218, 222 (Bkrtcy.N.D.Texas 1994) (refusing to lift a stipulation to arbitrate claim because client was bound to acts of his attorney).

Plaintiff has not met his burden of showing that there was no consent to the arbitration stipulation. To the contrary, Plaintiff admits that he agreed to arbitration and discussed arbitration with his attorney. Considering these facts the Court cannot at this late date dismiss the stipulation to stay the federal action in favor of binding arbitration.

### D. *PREJUDICE TO THE DEFENDANT*

 Plaintiff waited more than five months after the stipulation was filed, and until two weeks before the arbitration, to first attempt to withdraw the stipulation. Plaintiff originally argued that he was not aware of the upcoming arbitration hearing until he fired his attorney, but his Declaration disproves this statement. Thus, other than a last minute change of heart, Plaintiff has no excuse for not attempting to withdraw the stipulation in a more timely fashion.

Plaintiff was aware that during the five month period his federal action was stayed that preparations for the arbitration were going forward. Defendant relied on the stipulation and invested considerable time, energy and financial resources in preparing for, attending, and presenting its case at the arbitration hearing. Both the arbitrator and Defendant's counsel flew to Hawaii to attend the arbitration hearing. Defendant had retained expert witnesses and had both expert and lay witnesses ready to testify at the arbitration hearing. *See* Transcript of Arbitration Hearing, Exhibit A to Affidavit of Melinda Manley, filed November 13, 2000, at 16:15–17 (hereinafter "Arbitration Transcript"). Plaintiff was phoned by the arbitrator and given the opportunity to participate in the arbitration. *See Id.* at 12–14. Any withdrawal of the stipulation at the time of the original motion or now would severely prejudice Defendant for its reasonable reliance upon the stipulation.

Accordingly, the Court finds that Plaintiff is bound by the Stipulation to Stay Federal Action Pending Completion of Binding Arbitration signed by his then attorney, T. Stephen Leong, and DENIES Plaintiff's Motion.

### II *MOTION TO CONFIRM ARBITRATION AWARD*

 Judicial review of an arbitration award is extremely limited. Section 9 of the Federal Arbitration Act ("FAA") mandates a court to order confirmation unless the award is "vacated, modified or corrected...." 9 U.S.C. § 9 (stating that the court "must" confirm). "An [arbitration] award will not be set aside unless it manifests a complete disregard of the law." *Barnes v. Logan,* 122 F.3d 820, 821 (9th Cir.1997), *cert. denied,* 523 U.S. 1059, 118 S.Ct. 1385, 140 L.Ed.2d 645 (1998). In fact, "an arbitration award must be confirmed '[a]s long as the arbitrator is even arguably ... acting within the scope of his authority.'" *United Food & Comm. Workers Int'l Union, Local 588 v. Foster Poultry Farms,* 74 F.3d 169, 173 (9th Cir. 1995) (citation omitted). As repeatedly stated by the Ninth Circuit, if, "on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced." *Id.* (citing to *Sheet Metal Workers Int'l Assoc. v. Arizona Mechanical & Stainless, Inc.,* 863 F.2d 647, 653 (9th Cir.1988)).

 Plaintiff argues that the Court cannot confirm the arbitration award because the stipulation to stay the federal action pending binding arbitration was contrary to law. Plaintiff does not object to the findings of the arbitrator, and in fact states that if "the Court finds that the underlying documents have legal authority then it must rule that any proceedings which followed as a result of those governing documents were also legal and binding

upon the parties." Plaintiff's Motion to Dismiss Stipulation, at 2.

The Arbitration went forward on October 11, 2000 in front of the Honorable Robert Devich, retired Justice. At the conclusion of the arbitration proceedings, Justice Devich issued an award for Defendant. *See* Ex. A to Defendant's Motion (hereinafter "Arbitration Award").

Plaintiff appeared at the arbitration hearing telephonically and informed Justice Devich that he had filed a motion for reconsideration with this Court in regard to a stay of the arbitration hearing and to lift the stay of the federal action. *See* Arbitration Transcript at 12–14; Arbitration Award at 1. Justice Devich informed Plaintiff that he was aware that this Court had ruled on Plaintiff's motion and that the arbitration would go forward. *See* Arbitration Transcript at 16–17. Justice Devich informed Plaintiff that if he refused to appear, Defendant would be asked to make an offer of proof as to why Defendant should prevail and upon that offer of proof a decision would be rendered irrespective of Plaintiff's absence. *Id.* at 21. Plaintiff declined to present his case and the arbitration went forward without his presence. *Id.* at 24–25.

Justice Devich found that Plaintiff could not make out a prima facie case under the ADA because he failed to show that he was disabled under the ADA, and failed to establish that he was able to perform the essential functions of his job with or without reasonable accommodation. *See* Arbitration Award at 2. Justice Devich further found that Defendant had been willing to discuss with Plaintiff ways to accommodate him and that Defendant had offered alternative positions to Plaintiff in hopes of accommodating Plaintiff. *Id.* The Arbitrator's decision was based on the proof submitted by Defendant and uncontradicted by Plaintiff. Indeed, Plaintiff submitted no evidence at all to support his claims. The Court finds that the Arbitration Award does not manifest a complete disregard of the law.[7]

Therefore, the Court GRANTS Defendant's Motion to Confirm the arbitration award pursuant to 9 U.S.C. § 9 and orders judgment be entered in conformity with the award.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion to Dismiss Stipulation and GRANTS Defendant's Motion to Confirm Arbitration Award.

IT IS SO ORDERED.

---

**7.** Justice Devich did not specifically address all the causes of action alleged by Plaintiff but implicitly rejected them all as meritless by making the award for Defendant. Moreover, Plaintiff did not present any evidence to support any of his claims, Plaintiff did not challenge the Arbitrators Award as incomplete, and Plaintiff's failure to make a prima facie claim of discrimination under federal law implicitly means that he fails to make out a state law discrimination claims because they are analyzed under the same legal standard as federal claims. Plaintiff's failure to present any evidence means that he cannot have met his burden for any of his causes of action. Accordingly, the Court finds that the Award does not manifest a complete disregard of the law.