982 F.2d 1491
 24 Fed.R.Serv.3d 662, 23 Envtl. L. Rep. 20,630
 UNITED STATES of America, Plaintiff-Amicus Curiae,
v.
Royal N. HARDAGE Defendant.
HARDAGE STEERING COMMITTEE Defendant-Appellee,
v.
JOC OIL, EXPLORATION; Dal-Worth, Industries; Double Eagle;
Samuel Bishkin, doing business as Eltex Chemical; L & S
Bearing Company; Kerr-McGee Corporation; Cato Oil; Powell
Sanitation Service, Inc.; Lowe Chemical; Monsanto;
Textron Inc.; PPG Industries; A.H. Belo, doing business as
Dallas Morning News; Acme Fence & Iron Co.; Alamo Group
Texas, Inc.; AAR Oklahoma, Inc.; Aircraftsman, Inc.;
Agnew Auto Parts; American National Can Corporation;
Anadite, Inc.; Arrow Tank Trucks; Aztec Manufacturing;
Arrow Industries; Aviall of Texas, Inc.; BASF; Betz
Laboratories, Inc.; Blanks Engraving; Beazers Materials;
Blackwell Zinc Company, Inc.; Broadway Machine & Motor
Supply, Inc.; The Bucket Shop, Inc.; Charles Machine
Works, Inc.; Container Supply Inc.; Carnation Company;
Container Corp. of America; Continental Can Company, Inc.;
Cook Paint & Varnish Company; CTU of Delaware; Country
Home Meat Company; Dart Industries; Delta Faucet Company;
Dow Chemical Company; Del Paint Corporation; Dixico, Inc.;
Downtown Airpark, Inc.; Drilex Systems, Inc.; Dubois
Chemicals, Inc.; Dresser Industries, Inc.; Drillers Engine
& Supply, Inc., Dura Chrome; Fisher Controls; GAF; E C
Industries; Fred Jones Manufacturing Company; General
Dynamics; General Motors Corporation; Glidden Company;
SCM Corporation; Groendyke Transport, Inc.; General Electric
Company; Goodyear Tire and Rubber, Inc.; H.W. Allen
Hudiberg Chevrolet; Ingersoll-Rand Oilfield Products
Company; Hinderliter Tool; ICO, Inc., formerly known as
Rodco, Inc.; Johnson & Johnson Medical, Inc.; Ortho
Pharmaceutical Corp.; Johnson-Johnson Hospital; Surgikos,
Inc.; Kelly Moore Paint; Kerr Glass Manufacturing;
Laidlaw Waste; W.J. Lamberton; Master Motor Rebuilders,
Inc.; Fixture Morris Company; Madix; George McKiddie,
doing business as Capitol Grease Co.; Motorolla; Northrop
Worldwide Aircraft, doing business as Earl D. Mills;
Packaging Corporation of America; The Oklahoma Publishing
Company Parker-Hannifin Corp.; Printpack, Inc.; Procter &
Gamble Manufacturing Co.; Quebecor Printing; Maxwell
Communication; Riverside Press; Reliance Universal, Inc.;
Rohm & Haas Rotex Corporation; Sherwin Williams Company
Star Manufacturing; Sermatech; Southwest Electric Company;
Stearns & Foster Bedding; Susan Crane; Trigg Drilling
Company; Sublett & Associates, Inc.; Teccor Electronics;
TRW, Inc.; Turbodel; United Plating Works, Inc.; Valley
Steel Products Company; Unit Parts Company; United States
Corporation; United State Pollution Control, Inc.; Van Der
Horst USA; Waste Management of Oklahoma; Western Uniform &
Towel Service; Zoecon Corporation; Xerox, Third-Party Defendants,
and
Jones-Blair Co.; O'Brien Corporation;
Third-Party-Defendants-Appellants,
 No. 91-6186.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 6, 1993.
 
 Arthur A Schulcz (Timothy L. Harker, with him on the brief), of The Harker Firm, Washington, DC, for third-party-defendants-appellants.
 Jeffrey N. Martin (Hether C. Macfarlane, with him on the brief), of Hunton & Williams, Washington, DC, for defendant-appellee.
 Roger B. Clegg, Deputy Asst. Atty. Gen., Dept. of Justice, Washington, DC (Barry M. Hartman, Acting Asst. Atty. Gen., David C. Shilton, Anna L. Wolgast, John T. Stahr, Attys., Environmental and Natural Resources Div., Dept. of Justice, Charles De Saillan, Atty., Office of Enforcement, E.P.A., with him on the brief), for U.S. as amicus curiae.
 Before TACHA and BALDOCK, Circuit Judges, and BROWN, District Judge.*
 BALDOCK, Circuit Judge.
 
 
 1
 This case arises from the cleanup effort at the Hardage Superfund Site (Hardage Site), a federally controlled Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) site near Criner, Oklahoma. CERCLA §§ 101-405, 42 U.S.C. §§ 9601-9675. Third-party-defendants The O'Brien Corporation and Jones-Blair Company (Appellants) appeal from the district court's September 22, 1989 order approving a consent decree for de minimis settlement, and the district court's April 2, 1991 order enforcing a settlement between Appellants and Defendant-Appellee Hardage Steering Committee (HSC). Also before the court is HSC's motion to dismiss this appeal for lack of jurisdiction.
 
 
 2
 In 1986, in an effort to clean up the Hardage site, the government filed suit against thirty-two waste generators and three waste transporters seeking injunctive relief under CERCLA § 106(a), 42 U.S.C. § 9606(a), to require them to clean up the site, and to recover costs incurred by the government under CERCLA § 107(a), 42 U.S.C. § 9607(a).[1] Most of these original defendants organized themselves as HSC defendants and stipulated to liability for the presence of hazardous waste at the Hardage site. Appellants were not sued by the government, however, in 1987, HSC filed a third-party complaint against Appellants as parties also liable for waste generation at the site. Appellant's waste volumes[2] qualified them as de minimis parties under CERCLA § 122(g), 42 U.S.C. § 9622(g).
 
 
 3
 On April 7, 1989, the government submitted a de minimis consent decree to the district court for approval. The consent decree embodied a CERCLA § 122(g), 42 U.S.C. § 9622(g), de minimis settlement reached with Appellants and 177 other de minimis parties. The district court conducted a hearing on the proposed de minimis consent decree on September 22, 1989, and entered an order approving the decree. At the hearing on the motion for entry of the consent decree, the court distinguished a contribution claim from a response cost claim under CERCLA, and determined that the de minimis settlement did not release the de minimis settlors from potential liability to HSC for its response costs.[3] On November 28, 1990 the district court found that Appellants were liable parties under CERCLA § 107(a) as generators of hazardous waste at the Hardage site.[4]
 
 
 4
 HSC's response cost claim against all third-party defendants was scheduled to proceed to trial on March 27, 1991. Prior to this date, all other third-party defendants except Appellants and Cook Paint & Varnish Company (Cook Paint), a non-de minimis third-party defendant, settled with HSC. On the morning of March 27, 1991, Cook Paint settled with HSC. The district court also determined that Appellants, through third-party defendant liaison counsel Mr. William Conger, had also settled with HSC. The court thereafter entered the April 2, 1991 order enforcing the settlement between Appellants and HSC.
 
 
 5
 On appeal, Appellants raise the following issues: (1) that the court erred in enforcing the settlement agreement between Appellants and HSC, (2) that the district court erred in interpreting CERCLA § 122(g) to allow HSC's response cost claims against Appellants to survive the de minimis consent decree, (3) that the court erred in refusing to evaluate Appellant's request for relief based upon HSC's apparent misrepresentation to the court as to the size and nature of its response costs claims, and (4) that the court erred by refusing to rule on its summary judgment motions. HSC's motion to dismiss this appeal for lack of jurisdiction is also before this court.
 
 I.
 
 6
 We first address HSC's motion to dismiss this case for lack of jurisdiction. HSC initially claimed that Appellants lacked a final appealable order when they filed their notice of appeal. Although HSC appears to have since conceded that there is now a final judgment over which we have jurisdiction, we address this issue because the threshold question for the court is always its jurisdiction. Tosco Corp. v. Hodel, 804 F.2d 590, 591 (10th Cir.1986) (per curiam).
 
 
 7
 On April 29, 1991, Appellants filed a notice of appeal. At this time, Appellants had not obtained a Fed.R.Civ.P. 54(b) certification[5] and the multiple claim, multiple party litigation was ongoing. On May 17, 1991, HSC filed a motion to dismiss for lack of jurisdiction pointing out the lack of a final judgment in this case as required by 28 U.S.C. § 1291. On May 21, 1991 we issued an order, pursuant to Lewis v. B.F. Goodrich, 850 F.2d 641 (10th Cir.1988) (en banc), requiring Appellants to obtain either Rule 54(b) certification or a final judgment within thirty days. United States v. Hardage, No. 91-6186 (10th Cir. May 21, 1991) Appellants responded on June 3, 1991, arguing that the two issues raised on appeal satisfied the collateral-order exception doctrine to the final-decision rule of § 1291. Appellants also applied to the district court for Rule 54(b) certification. On June 17, 1991, the district court denied Appellant's request for Rule 54(b) certification, and, upon the expiration of the thirty days, no final judgment was obtained. HSC then renewed its motion before this court to dismiss for lack of jurisdiction. Thereafter, on October 28, 1991, prior to oral argument, the district court granted Appellants Rule 54(b) certification. Appellants did not file a new notice of appeal after obtaining Rule 54(b) certification. As of this date, the multiple claim, multiple party litigation remains ongoing in the United States District Court for the Western District of Oklahoma. The issue here is whether the belated Rule 54(b) certification obtained by Appellants ripens the premature notice of appeal as of the date of certification, thereby granting us jurisdiction over the appeal.
 
 
 8
 In Lewis, the plaintiff appealed a grant of summary judgment before a counterclaim between the parties had been adjudicated. However, before this court dismissed the case for lack of a final appealable order, the pending counterclaim was dismissed. This court stated that in a situation "in which the other claims were effectively dismissed after the notice of appeal was filed, we believe Fed.R.App.P. 4(a)(2) permits the interpretation that the notice of appeal, filed prematurely, ripens and saves the appeal." Lewis, 850 F.2d at 645. In Lewis, this court discussed two other situations in which premature notices of appeal may be cured even when the district court case is still ongoing at the time the appeal reaches this court's attention. First, if a belated Rule 54(b) certification has been obtained after the notice of appeal was filed, the notice of appeal will be deemed to ripen as of the date of the certification and this court will be granted jurisdiction over the appeal. Id. Second, if no Rule 54(b) certification has been obtained at the time the appeal reaches this court's attention, the appellant will be given a date certain by which to secure Rule 54(b) certification or a final judgment, and if no such certification or judgment is obtained by the specified date, the case will be summarily dismissed for lack of jurisdiction. Id. at 645-46.
 
 
 9
 This case presents a hybrid Lewis situation. As of this appeal there is no final judgment, and Appellants failed to obtain a Rule 54(b) certification within the specified thirty-day period, pursuant to our order. However, Appellants did manage to obtain Rule 54(b) certification before we acted to dismiss this case. We believe that, given the Lewis court's liberal interpretation of Fed.R.App.P. 4(a)(2),[6] the belated Rule 54(b) certification obtained in this case is sufficient to grant us jurisdiction over the appeal. Here, despite all of the intervening events, the fact remains that Appellants obtained a Rule 54(b) certification before we acted to dismiss this case. We therefore hold that, under the policies expressed in Lewis, the premature notice of appeal ripened as of the date of certification, and we accept jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.
 
 
 10
 This case exemplifies the difficulties predicted by the dissent in Lewis, 850 F.2d at 648-49 (Baldock, J., dissenting). Appellants filed a premature notice of appeal which we should have dismissed. Instead, we gave Appellants thirty days in which to cure their premature notice of appeal by obtaining a Rule 54(b) certification or a final judgment. They failed to do so. Under Lewis, we then should have summarily dismissed the case, however, we failed to do so, despite HSC's renewed motion to dismiss which pointed out this defect. Most likely, we failed to summarily dismiss this case because Appellants, facing dismissal of their case, raised the issue of the collateral-order exception to 28 U.S.C. § 1291. Our failure to dismiss then gave Appellants even more time in which to obtain a Rule 54(b) certification, which they finally did some five months after our order granting them thirty days in which to do so, and some six months after their notice of appeal was filed. The rules of appellate procedure are not difficult, and perfecting an appeal should be entrusted to those appearing before the court rather than the court itself. Lewis, 850 F.2d at 647 (Baldock, J., dissenting). This case is but one example of the waste of judicial time and resources "sheparding stray appeals back into the flock," id. at 648, rather than resolving correctly filed appeals.
 
 II.
 
 11
 Appellants contend that the district court erred in enforcing a settlement agreement between themselves and HSC. Appellants contend that although they had entered into settlement negotiations with HSC, they had subsequently changed their minds and had never agreed to the settlement imposed by the district court. We review the court's approval of the settlement agreement for an abuse of discretion. Reiss v. Hagmann, 881 F.2d 890, 891-92 (10th Cir.1989).
 
 
 12
 On March 27, 1991, the scheduled start of the trial on the third-party response cost claim, the district court held a hearing to determine if all the claims had been settled thereby rendering the trial unnecessary. The following facts were before the district court. First, Ms. Kathy Bunn, counsel for Cook Paint, informed the court that Cook Paint had reached a settlement agreement with HSC. Next, the court read into the record a letter written on March 22, 1991, by Mr. Timothy Harker, counsel for Appellants, to Mr. Conger, third-party defendant liaison counsel, in which Mr. Harker informed Mr. Conger:
 
 
 13
 The [Appellants] are prepared to settle the HSC claims on the same basis of one dollar per gallon if Cook Paint does not litigate the HSC response cost phase....
 
 
 14
 ....
 
 
 15
 You indicated that you would apprise the HSC of ... the positions of [Appellants] in time for settlement to occur and to avoid trial ... as appropriate ...
 
 
 16
 Transcript of Hearing at 19-20, United States v. Hardage (W.D.Okla. March 27, 1991) (No. CIV-86-1401-W). Mr. Conger then informed the court that, since Cook Paint had settled, "it seems to me that all of the protocols and requirements set forth in Mr. Harker's letter are performed and therefore, that the settlement should go through on behalf of [Appellants], pursuant to the instructions of this letter." Id. at 20-21. The court stated that it agreed but would allow Mr. Arthur Schulcz, counsel for Appellants, to make a statement into the record. The following exchange occurred:
 
 
 17
 Mr. Schulcz: Your Honor, I conveyed to Mr. Conger on Monday [March 25, 1991] that the terms of that letter had changed and that [Appellants] wish to reserve that right. And at this time, we are without authority from those people to enter the settlement.
 
 
 18
 I think that's all I need to say.
 
 
 19
 Mr. Conger: I would like to respond for the record that I don't think that Mr. Schulcz even knew that this letter existed on Monday before he talked to me. I have spoken to Mr. Harker as late as yesterday [Tuesday, March 26, 1991] and advised him of the status of these proceedings. As it existed yesterday, Mr. Harker never at any time indicated to me about changing his previous instructions to me.
 
 
 20
 Mr. Schulcz: I feel I need to respond for the record too. I was aware of that letter, Your Honor. Mr. Harker conveyed to me on Friday that he was writing it. He talked to me specifically on Monday morning, indicated that he would convey the contents of the change to Mr. Conger. On his instructions, I made sure that we had reserved the right to decide.
 
 
 21
 The Court: All right. As the court has previously announced, it's my opinion that the terms and protocols and conditions have been complied with; that Mr. Conger is authorized to settle the case on that basis.
 
 
 22
 The court will enforce the settlement in that regard.
 
 
 23
 In addition to that, there is a practical matter that I feel obligated to state. The court is not about to undertake a trial of this magnitude and size on behalf of two de minimis parties. Costs would very quickly exceed any amount in controversy as between them and certainly exceed any differences in their positions now from the time that that was stated.
 
 
 24
 For those reasons, the court will enforce the settlement.
 
 
 25
 Id. at 21-22. In this brief hearing, the court received no sworn testimony subject to cross-examination. The court also received no briefings or affidavits in regard to the dispute over whether Appellants had agreed to settle.
 
 
 26
 A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it. Tiernan v. Devoe, 923 F.2d 1024, 1031 (3rd Cir.1991); Millner v. Norfolk & W.R. Co., 643 F.2d 1005, 1009 (4th Cir.1981). However, the majority of our sister circuits agree that where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing. See e.g., Bamerilease Capitol Corp. v. Nearburg, 958 F.2d 150, 153 (6th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 194, 121 L.Ed.2d 137 (1992); Tiernan, 923 F.2d at 1031; Adams v. Johns-Manville Corp., 876 F.2d 702, 708 (9th Cir.1989); Petty v. Timken Corp., 849 F.2d 130, 132 (4th Cir.1988); Gatz v. Southwest Bank of Omaha, 836 F.2d 1089, 1095 (8th Cir.1988); Mid-South Towing Co. v. Har-Win, Inc., 733 F.2d 386, 390 (5th Cir.1984); Autera v. Robinson, 419 F.2d 1197, 1203 (D.C.Cir.1969). While we have not adopted an ironclad rule, in Chicano Police Officer's Ass'n v. Stover, 624 F.2d 127 (10th Cir.1980), we remanded for an evidentiary hearing when material facts concerning the terms of a settlement agreement were in dispute. Id. at 131-32. Likewise in the present case, we conclude that an evidentiary hearing is required to resolve the dispute of whether Appellants and HSC validly entered into a settlement agreement.
 
 
 27
 In Autera, the D.C. Circuit Court reversed the lower court's enforcement of a disputed settlement that relied solely on the representations of counsel and affidavits. 419 F.2d at 1200-1202. The court stated that without the benefit of cross-examination, the attorneys' conflicting representations and affidavits "stood on the same plane as nontestimonial presentations of fact [and] [a]s such ... neither was an acceptable mode of proof of the facts in issue." Id. at 1202. In this case, the district court was faced with conflicting attorney representations of material facts relating to whether the parties had reached a settlement. Because the unsworn attorney representations, which were not subject to cross-examination, were conflicting, neither was acceptable to prove the existence or nonexistence of a settlement. The conflicting representations made by Mr. Schulcz and Mr. Conger established that a material fact dispute existed as to whether a settlement had been reached. Mr. Conger represented to the court that all of the conditions of Appellants' offer to settle had been met. Mr. Schulcz, on the other hand, represented to the court that the offer of settlement had been withdrawn before the condition of Cook Paint's settlement had been satisfied, thereby negating Mr. Conger's authority to enter into a settlement agreement for Appellants. Furthermore, Mr. Harker, whose testimony appears central to this issue, did not appear. Whether an offer to settle has been accepted or effectively withdrawn prior to acceptance goes to the issue of the very formation of a settlement agreement, and as such is a material matter. Because the court failed to receive sworn testimony, subject to cross-examination, or sworn affidavits or briefing on this formation issue, the district court did not have before it sufficient factual development to approve the settlement agreement. "[A]n approval of a compromise, absent a sufficient factual foundation, inherently constitutes an abuse of discretion." Reiss, 881 F.2d at 892 (citation omitted). Therefore, we VACATE the district court's order enforcing the settlement between Appellants and HSC and REMAND for an evidentiary hearing.[7]
 
 
 
 *
 The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 For background information and disposition of the underlying case see United States v. Hardage, 982 F.2d 1436 (10th Cir.1992)
 
 
 [2]
 O'Brien generated 26,400 gallons and Jones-Blair 43,022 gallons of the greater than twenty million gallons of hazardous waste received at the Hardage site
 
 
 [3]
 At the hearing, HSC conceded that the de minimis settlement precluded it from prosecuting its contribution claims against the de minimis settlors. However, HSC argued that it had incurred independent response costs in developing a remedy for the Hardage site and defending against the government's § 106(a) action. HSC argued, and the court agreed, that these response cost claims could go forward against the de minimis settlors despite their settlement with the government. At the hearing HSC represented to the court that its claim for response costs amounted to approximately $10 million. Later, HSC claimed it had incurred response costs of $34-55 million
 
 
 [4]
 In September and October of 1990, Appellants filed motions for partial summary judgment against HSC. Appellant's first theory was that the district court's determination in United States v. Hardage, 750 F.Supp. 1460 (W.D.Okla.1990), that HSC was entitled to only $3.7 million of its $9.5 million response cost claim against the United States as a liable party made the issue of HSC's response costs res judicata. Appellants also moved for partial summary judgment on the theory that HSC's response costs failed to meet the requirements of the National Contingency Plan. The district court did not rule on these motions
 
 
 [5]
 In judgments involving multiple claims or multiple parties the district court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties upon making a determination that there is no just reason for delay and upon express direction for the entry of judgment. Fed.R.Civ.P. 54(b)
 
 
 [6]
 Fed.R.App.P. 4(a)(2) provides: "Except as provided in (a)(4) of this Rule 4, a notice of appeal filed after the announcement of a decision or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof."
 
 
 [7]
 Because we remand for an evidentiary hearing on the issue of whether Appellants and HSC have settled this dispute, we do not address the remaining issues, as these issues are potentially moot depending upon the resolution of the settlement issue. See Lake Coal Co., Inc. v. Roberts & Schaefer Co., 474 U.S. 120, 106 S.Ct. 553, 88 L.Ed.2d 418 (1985) (dismissing petition for certiorari as moot when underlying causes of action have been settled); Tosco Corp. v. Hodel, 804 F.2d 590, 592 (10th Cir.1986) (per curium) (final settlement of dispute moots action on appeal)