2009 OK 18

**In re DE–ANNEXATION OF CERTAIN REAL PROPERTY FROM the CITY OF SEMINOLE, a municipal corporation,**

**Bedford T. Brewer and Larry Brewer, Appellants,**

v.

**The City of Seminole, Appellee.**

**No. 104,212.**

Supreme Court of Oklahoma.

March 10, 2009.

Jerry L. Colclazier, Colclazier & Associates, Seminole, OK, for Plaintiffs/Appellants.

David W. Kirk, Lytle, Soule & Curlee, P.C., Oklahoma City, OK, for Defendant/Appellee.

COLBERT, J.

¶ 1 The issue presented is whether the trial court erred in determining that a binding settlement agreement had been reached in this matter based upon the parties' discussions and correspondence. This Court holds that the evidence of the parties' negotiations does not demonstrate mutual assent to the terms of a settlement.

## PROCEDURAL HISTORY

¶ 2 This is the second appeal in this matter. The decision in the first appeal reversed summary judgment for the City of Seminole (City). *In re De-annexation of Certain Real Property*, 2006 OK CIV APP 103, 143 P.3d 228.

¶ 3 In 1976, City annexed the Sinclair Industrial Addition and other land by ordinance. Plaintiffs (the landowners) owned lots in the addition. The streets shown in the plat of the addition were never constructed. "Sometime between April 14, 2004, and August 25, 2004, City filed a municipal criminal charge against Bedford Brewer, [one of the landowners] alleging that he had placed two steel I-beams across the platted road

easement in the Sinclair Industrial Addition adjacent to [his] property and he had thereby created a public nuisance in violation of ... City's ordinances." *Id.* ¶ 12, 143 P.3d at 231. Brewer challenged his conviction in district court by challenging the validity of the annexation ordinance. He also filed this action seeking de-annexation of his property.

¶ 4 As part of a proposed resolution of the criminal matter, Brewer entered a nolo contendere plea to the criminal charge. The court accepted the plea and entered a judgment and sentence. In this civil matter, City moved for summary judgment arguing that the no contest plea established that the land on which the violation occurred was within the city limits. *Id.* ¶ 16, 143 P.3d at 232. The trial court apparently accepted that argument and granted summary judgment in favor of City.

¶ 5 The Court of Civil Appeals reversed the summary judgment. It held that "[t]he no contest plea [was] no more than a stipulation that City would be able to prove the property upon which the crime was committed was within the city limits of Seminole. *It [was] not a stipulation that the property was in fact within those limits."* *Id.* ¶ 19, 143 P.3d at 232. The matter was remanded to the trial court.

¶ 6 On August 30, 2006, counsel for City in this matter placed a telephone call to the landowners' counsel to request that the landowners submit a settlement demand. This appeal addresses only whether the subsequent negotiations of the parties ripened into a binding settlement agreement.

## STANDARD OF REVIEW

¶ 7 "A motion to enforce a settlement agreement is treated as a motion for summary judgment." *Russell v. Bd. of Co. Comm'nrs,* 2000 OK CIV APP 21, ¶ 7, 1 P.3d

at 445. "Whether a settlement has been reached so as to conclude the action may be a question for a jury." *Id.* ¶ 7 n. 8, 1 P.3d at 445 n. 8. However, when, as in this matter, the dispute concerns the legal effect of the relevant facts, the question is whether the party seeking enforcement is entitled to judgment as a matter of law. Rules for Dist. Cts., Okla. Stat. tit. 12, ch. 2, app., Rule 13(e) (Supp.2008). Legal issues are reviewed de novo. *Kluver v. Weatherford Hosp. Auth.,* 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084.

## APPLICABLE LAW

¶ 8 A settlement agreement is an oral or written contract between the parties. *Russell,* 2000 OK CIV APP 21, ¶ 3, 1 P.3d at 443. As such, it is subject to the rules of offer and acceptance and of mutual assent which control any issue of contract formation.

¶ 9 "The consent of the parties to a contract must be: 1. Free, 2. Mutual, and 3. Communicated by each to the other." Okla. Stat. tit. 15, § 51 (2001). "Consent is not mutual unless the parties all agree upon the same thing in the same sense...." Okla. Stat. tit. 15, § 66 (2001). Therefore, "an acceptance will not bind the offeror unless it is unconditional, identical to the offer, and does not modify, delete or introduce any new terms into the offer." *Ollie v. Rainbolt,* 1983 OK 79, ¶ 19, *669 P.2d 275,* 280. An acceptance that modifies the terms of an offer is a counter offer and constitutes a rejection of the initial offer. *Young v. Roller,* 1948 OK 29, ¶ 6, 201 P.2d 793, 796; Okla. Stat. tit. 15, § 71 ("A qualified acceptance is a new proposal.").[1]

## FACTS AND ANALYSIS

¶ 10 The landowners made a written offer of settlement on August 31, 2006, which proposed three terms.[2]

---

**1.** Oklahoma's codification of the common law rule does not apply to a contract for the sale of goods. At common law, an acceptance which modifies the terms of the offer is a counter offer, and is not sufficient to bind the parties. Article 2 of the Uniform Commercial Code however, provides that a response which varies the terms of the offer may constitute acceptance and form a contract unless the response is conditioned on further assent by the offeror. *See* Okla. Stat. tit.

12A, § 2–207 (2001). This matter does not involve a sale of goods and Article 2 of the UCC is therefore inapplicable.

**2.** The August 31, 2006, letter from Jerry L. Colclazier, counsel for the landowners, to David W. Kirk, counsel for the City of Seminole, stated:

In response to your request for an offer of settlement in the above referenced case, please

█ The City would (1) confess the de-annexation issue, (2) direct the Industrial Authority to execute a deed, and (3) reimburse the landowners' counsel $7,500.00 of his attorney fee. The City's September 7, 2006, written response [3] began by stating: "I believe there is a very real opportunity to resolve this dispute." The response gave assent to the "deed" term and stated counsel's belief "that we will be able to make an agreement regarding the reimbursement of fees along the lines you propose." It did not, however, recite acceptance of the "confess the de-annexation" term. Instead, City's counsel sought clarification of what was meant by the proposed term. Therefore, the response was not an unqualified acceptance of the terms of the offer. It was an invitation to negotiate further.

█ ¶ 11 Further negotiations occurred in a face-to-face meeting of opposing counsel on September 8, 2006, and City contends that mutual assent was reached as to all three terms proposed in the August 31st offer and a binding agreement was formed. There are two documents which City attached to its motion as evidence of mutual assent, an affidavit of counsel for City and a letter from City's counsel to the landowners' counsel dated September 12th "confirming" the substance of the September 8th negotiations.

¶ 12 The affidavit demonstrates that a new condition on the "confess the de-annexation issue" term was injected into the negotiations by City's insistence that the settlement be "global." City's September 12th letter [4] con-

---

consider the following offer of settlement. Plaintiffs will dismiss their case if the City confesses the deannexation issue, has the Industrial Authority sign the remaining deed on the property which has been paid for but not yet transferred, and reimburses Mr. Brewer for $7,500.00 of his attorneys fees, an amount significantly less than that incurred. Should we have to continue the litigation, I would anticipate that the attorneys fees in this civil rights/annexation case will greatly exceed the amount of this offer, not to mention damages for unlawfully taking Plaintiffs' property.

This offer will expire as of the close of business on September 8, 2006. If you have any questions or comments, please feel free to contact me.

3. The text of the September 7, 2006, response by City's counsel is as follows:

Jerry, I have had an opportunity to discuss your settlement proposal, which I requested, with the persons to whom I report. I believe that there is a very real opportunity to resolve this dispute. However, I am uncertain what, exactly, your proposal is with respect to your first listed term, which you stated would be that "the City confesses the de-annexation issue...." As part of a settlement of any and all claims, the appropriate authority for the City will certainly agree to prepare a warranty deed with respect to the tracts which were purchased. I believe that we will also be able to make an agreement regarding the reimbursement of fees along the lines of the terms you have proposed. However, please contact me regarding the remaining term regarding "confession of de-annexation." In this regard, I believe we may be able to do something with respect to your clients' tracts acknowledging that they are de-annexed and never will be, etc. However, requiring the City to admit that none of the tracts in the addition were annexed so many years ago presents a number of very

significant problems. I hope this communication is sufficient to comply with the deadline you stated in your offer. I look forward to discussing these issues with you further.

4. City's September 12th letter provides:

This will confirm our discussions in your office on Friday, September 8, 2006. At that time, I confirmed that the City of Seminole, or those acting in its behalf, will agree to pay the $7,500.00 figure you quoted in your recent correspondence regarding a potential settlement of this case.

Also, the City will agree, as I have referenced in my earlier faxes, to have the appropriate authority execute a deed to the tracts for which your clients have paid consideration but not yet received a formal conveyance.

Finally, I believe that we have an agreement in principal on your third condition. You indicated that the final term of your proposed settlement terms would be that the City "confess the de-annexation" issue. As we discussed, a complete de-annexation, or even confession of de-annexation, of all lots in the addition containing your clients' lots, would work considerable hardship and difficulty in a variety of ways. However, I believe it will be possible for the City to agree to "de-annex" the lots owned by your clients and to also provide a covenant of some kind that your clients' property will not [be] annexed in the future. It is my contemplation that the agreement means the City acknowledges the lots owned by your folks are no longer within [the] City limits and the City agrees not to annex those lots again in the future.

As we briefly discussed, it is my contemplation that this settlement is "global". In other words, any pending disputes, charges, citations, claims, etc., which have arisen since commencement of the litigation are also to be

firming the conversation defined "global" to mean that "any pending disputes, charges, citations, claims, etc., which have arisen since the commencement of the litigation are also to be abandoned or released as part of the conclusion of this litigation." The letter described an "agreement in principal [sic]" as to the "confess the de-annexation" term and mentioned the need to "confer with [the] Seminole City Attorney … regarding the precise manner in which the City will acknowledge that your clients' tracts are no longer annexed." In the letter, counsel for City stated that he would "prepare a formal release of all claims and Stipulation of Dismissal with Prejudice" within "the next few days or weeks."

¶ 13 The addition of the new "global" requirement negates any assertion that there was an unqualified acceptance of the terms of the landowners' August 31, 2006, written offer of settlement. No mutual assent was demonstrated by either the affidavit or the September 12th confirmation letter. Rather, that evidence demonstrates a counteroffer was made with a new and additional proposed term. That counteroffer was a rejection of the offer to settle and functioned as a new offer. The original offer to settle expired by its own terms for lack of acceptance by the September 8, 2006, deadline. No settlement contract was formed.

■ ¶ 14 The parties exchanged correspondence on September 15, 2006, apparently following a telephone conversation on that date. In anticipation of a response to its September 12, 2006, letter, City [5] stated: "We both agreed that the parties have reached a settlement in princip[le] although several tasks need to be completed to achieve that." The landowners' September 15th response [6] to the City's September 12th letter stated: "For the most part, I believe we have an agreement, with a couple of clarifications." The landowners' letter goes on to introduce new, but not necessarily inconsistent terms

abandoned or released as part of the conclusion of this litigation.

I will need to confer with Seminole City Attorney Brad Carter regarding the precise manner in which the City will acknowledge that your clients' tracts are no longer annexed. However, I hope to have an approach prepared within the next few days or weeks. I will also prepare a formal release of all claims and Stipulation of Dismissal with Prejudice.

As always, if you feel that I have incorrectly summarized our conversation or agreements, please do not hesitate to contact me so that we can make sure we are all proceeding on the same page in the immediate future.

Thank you for taking time to meet with me. I look forward to resolving this matter with you in the future.

5. City's September 15, 2006 letter states:

Thank you for taking the time to speak with me on Friday, September 15, 2006. You indicated that you were preparing a written response to my correspondence of September 12, 2006, and I look forward to receiving it.

Thank you for agreeing that the City of Seminole need not respond to your outstanding discovery requests, at least at this time. We both agreed that the parties have reached a settlement in principal although several tasks need to be completed to achieve that.

While we prepare the necessary deeds and agreements to implement the settlement terms, please provide your office's tax i.d. number so that I can request a draft in the agreed amount.

Should you have any questions, please call.

6. The landowners' September 15th response to City's September 12th letter provides:

I am in receipt of your letter of September 12, 2006. For the most part, I believe we have an agreement, with a couple of clarifications. First, Mr. Brewer is desirous of completing this matter soon, consequently, we would like to see the City's "approach" to resolve the annexation issue, as well as the formal release in the next few days, not weeks. The $7,500.00 figure on attorney's fees will only be accurate if we conclude this matter quickly, and with little additional attorney's fees charged to Mr. Brewer. Secondly, the Foundation promised Mr. Brewer an abstract as well as the deed to the property; please confirm that your clients still have the abstract to provide. Finally, we agree that the settlement should be global. In that regard, as part of the settlement, the City will take whatever action is necessary to expunge Mr. Brewer's criminal record pursuant to Title 22 O.S. § 18 within a reasonable period of time. My client's reputation is extremely important to him and we expect the City to remove this blight on his record, at their expense. Of course, I would be happy to perform the expungement also, but that would necessarily increase the amount of attorney's fees.

With these conditions, including a requirement that we close this matter and pay Mr. Brewer no later than September 22, 2006, I think we have an agreement.

If you have any questions or comments, or should you require any additional information, please feel free to contact me.

into the negotiations while at the same time accepting parts of the City's September 12th proposal. Although the landowners gave their assent to the "global" aspect of City's proposed settlement and the "attorney fee" term, provided that the settlement would be concluded in a timely manner, the landowners introduced two new terms by which City would (1) see that an abstract provided by "the Foundation" be supplied to the landowners, and (2) take whatever actions were necessary to "expunge Mr. Brewer's criminal record" in connection with the litigation. The landowners set a deadline of September 22, 2006, for "clos[ing] this matter."

¶ 15 The new additional terms proposed in the landowners' September 15th letter constitute a rejection of City's September 12th proposal. A new offer was created with terms that did not mirror the original offer of August 31, 2006.

7. City's September 25, 2006, letter states:

> This will acknowledge receipt of your letter dated September 15, 2006, faxed to my office on September 18, 2006. I am somewhat concerned in that you appear to be trying to alter terms to which we have already agreed.
>
> Please recall that you stated three terms which would be the basis for Mr. Brewer's agreement to settle all claims. I have now agreed to all of these terms, prior to your most recent correspondence.
>
> I do not believe your subsequent requests need to scuttle our previous agreement. However, let me say that I have not agreed to pay you any more in the way of attorney's fees than the figure you originally demanded, $7,500.00. It is my sincere desire and belief that all issues can be resolved with a minimum of effort on your part and so I do not agree that the amount of "attorney's fees" which we will pay to Mr. Brewer may be "adjusted" in the future.
>
> Second, your initial demand did not include any request that an abstract be provided to your client upon our preparation and completion of deeds of conveyance of the lots he has previously purchased. I believe I have mentioned that efforts to locate such an abstract were made in the past. I am currently unaware of the location of any abstract. Thus, not only have I not agreed to provide an abstract, but I cannot contemplate doing so in the future.
>
> With respect to our mutual desire that the settlement "be global", I have previously confirmed that the City will drop all matters, if any, currently pending against Mr. Brewer. Your most recent correspondence, however, attempts to impose upon the City an obligation to have Mr. Brewer's criminal records ex-

¶ 16 City objected to the introduction of new terms in a letter dated September 25, 2006.[7] City reminded the landowners that their original offer of August 31st contained three terms and stated that City had "now agreed to all of [the three] terms, prior to your most recent correspondence." City refused to provide an abstract and stated that it had no objection to Mr. Brewer expunging his criminal record. In addition, the letter mentions that City did not yet know how it would de-annex the Brewers' property.

¶ 17 City's rejection of the landowners' additional terms constituted a rejection of the landowners' September 15th offer and offered a new proposal for dealing with the additional proposed terms. No mutual assent was given and no contract was formed.

¶ 18 On September 25, 2006, a letter [8] from landowners counsel acknowledged City's re-

punged. Please accept this correspondence as confirmation that the City will have no objection to any effort by Mr. Brewer to have the record expunged; however, I do not anticipate undertaking any efforts in this regard.

> I look forward to providing the settlement check and necessary deeds to you in the very near future. I also look forward to advising you how the City will "de-annex" the Brewers' property. Those efforts will complete our consideration for your clients' agreement to dismiss and release all claims.
>
> I look forward to resolving this matter with you in the very near future.

8. The landowners' September 25th letter states:

> I am in receipt of you letter of September 25, 2006. Apparently, we never had a meeting of the minds on our attempted settlement. You may recall that I offered three terms of settlement on August 31, 2006. You could have settled the case by unequivocally accepting that offer. Instead, you counter offered with similar but different terms, which revoked my prior offer and constituted a new offer by your client. I also did not unequivocally accept your counter offer and suggested slightly different terms which again, constituted a new offer. If you are telling me that your client cannot accept the terms of my offer, I understand; we can recommence the litigation where we left off. Please respond to the requests for admissions by the close of business on October 3, 2006.
>
> In an attempt to still settle this case, I would like to respond to certain of the comments in your letter. With respect to the amount of fees, what we were dreading is now happening. Almost a full month has passed since we

jection of the new proposed terms. The landowners stated that "[a]pparently, we never had a meeting of the minds on our attempted settlement" and insisted that further attempts to settle be "along the terms stated" in the September 15, 2006, letter. In a response letter dated September 29, 2006, City "document[ed] how the meeting of the minds between [counsel] occurred regarding the settlement which has been achieved in this case." In a final letter, the landowners' counsel replied inviting City's counsel to enforce the "settlement" by motion. That proposal was unequivocally accepted on October 16, 2006, by the filing of "Defendant City of Seminole's Motion to Enforce Settlement Agreement and Brief in Support."

■ ¶ 19 City attached an affidavit from its counsel and the correspondence between counsel to support its motion to enforce the settlement agreement which it claimed was reached at the face-to-face meeting of counsel on September 8, 2006. The landowners responded challenging the legal conclusions City drew from the affidavit of its counsel and the correspondence.

¶ 20 In its December 18, 2008 court minute, the trial court reasoned that the landowners' offer of August 31, 2006, was accepted by City's letter of September 7, 2006, and that the need for "clarification" of the terms did not negate that acceptance. In the Jour-

nal Entry of Judgment, the trial court stated the following terms:

> [T]he Court finds that pursuant to the agreement 1) the plaintiff's property shall be de-annexed by the defendant and the defendant agrees not to attempt to annex plaintiff's property in the future, 2) the defendant shall convey by deed the disputed property, 3) defendant shall pay $7,500.00 in Attorney's fees to plaintiff's counsel, 4) the municipal conviction of the plaintiff shall be expunged, and 5) the agreement shall be universal and resolve all pending disputes between the parties.

Some of these terms, supplied in the Journal Entry, were not part of the negotiations until after September 7th, the date the trial court reasoned that acceptance had been given. The "global" or "universal" aspect of the negotiations was not discussed until the face-to-face meeting on September 8th and the expungement issue did not arise until it was presented in the landowners' September 15th letter. Yet, these terms were incorporated into an agreement which was formed, according to the trial court, on September 7th.

¶ 21 The trial court impermissibly composed a settlement agreement for the parties by supplying terms on which there had been no final agreement. It thus converted ongoing, yet deteriorating, negotiations into a contract. That piecemeal approach to con-

first discussed your settlement proposal and we are no closer to settlement than we were then. In the meantime Mr. Brewer continues to expend attorneys fees, only now it is for the settlement process, and for responding to letters like this. You may recall that I expressed my concerns about timely resolving this matter on September 15, 2006, it took you ten days to even respond to my letter; we are nowhere near completing the settlement. If your clients want to continue to pay you fees while we dicker back and forth, that's fine. My client does not. We consider Mr. Brewer's attorneys fees to be damages in this case and your client can either reimburse him for ALL of his fees in settlement or pay those fees (and more) in damages at the end of the case.

The abstract is another matter. As I explained to you previously, it is Mr. Brewer's understanding that Jenny Morgan or someone else in the City's control has the abstract. If so, he wants it. He has not suggested that you build the abstract or update it with the purchase transaction. He was promised the abstract and he simply wants the City to make good on that promise.

Finally, Mr. Brewer's reputation is important to him. A criminal misdemeanor conviction, and the stigma that accompanies such conviction, represents damages to Mr. Brewer. If he expends money to an attorney to expunge that record, it would also be damages. If the City expunged his record, then that's all that can be done to remediate the wrong that was done when he was charged with a crime on his own land which was not even in the City limits. You previously indicated that expungement would not be a problem, and that the City attorney could handle the legal work so Mr. Brewer wouldn't have to pay more in legal fees. Why the change of heart? The City should do this, or pay to have it done, because it is the right thing to do. If they refuse, we intend to ask a jury for money damages for loss of reputation as well as other remedies.

Mr. Brewer would still like to settle this matter, but along the terms stated in my September 15, 200[6] letter. Until then I consider the settlement dead and litigation back on. If you have any questions or comments, or should you require any additional information, please feel free to contact me.

tract formation ignores the requirements of offer and acceptance and the requirement of mutual assent to the terms of a contract. The trial court's judgment is therefore reversed and this matter is remanded to the trial court.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF COURT OF CIVIL APPEALS VACATED; TRIAL COURT REVERSED; CAUSE REMANDED.

EDMONDSON, C.J., TAYLOR, V.C.J., OPALA, KAUGER, WINCHESTER, COLBERT, JJ., concur.

WATT, J., dissent.

REIF, J., not participating.

HARGRAVE, J., disqualified.