**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 14, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

DEVON ENERGY PRODUCTION
COMPANY, L.P.,

      Plaintiff - Appellee,

v.

LINE FINDERS, LLC, d/b/a Line Finders,
f/k/a Line Finders, Inc.,

      Defendant - Appellant.

Nos. 21-6119 & 21-6162
(D.C. No. 5:20-CV-00636-F)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **MATHESON** and **EID**, Circuit Judges.
_____

Defendant-Appellant Line Finders, LLC, appeals the district court's

enforcement of a settlement agreement in favor of Plaintiff-Appellee Devon Energy

Production Company, L.P. Line Finders also appeals the district court's award of

attorney fees to Devon. We consolidated the appeals. Exercising jurisdiction under

28 U.S.C. § 1291, we affirm the district court's judgment.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. BACKGROUND

Line Finders provides support services for Devon's oil and gas operations.  In 2018, two Line Finders employees, Marcus Murschel and Michael Elsasser, were injured in a gas-line explosion allegedly caused by a Devon employee.  Mr. Murschel demanded compensation from Devon, prompting Devon to seek defense and indemnification from Line Finders under their support services contract—the "Master Service and Supply Agreement Onshore and Maritime" (MSSA), Aplt. App. at 22.  Line Finders rejected Devon's request, so Devon filed this diversity action, asserting claims for declaratory relief, breach of contract, and damages.

The parties engaged in settlement negotiations.  Line Finders outlined several material terms to resolve the dispute, and on April 7, 2021, Devon emailed Line Finders a counter-offer.  Devon proposed, among other things, that the parties file a joint or unopposed motion to enter judgment in favor of Devon on its claim for declaratory relief.  If granted, Devon would dismiss its remaining claims and Line Finders would not appeal.  If Mr. Murschel or Mr. Elsasser advanced their claims, the parties would resubmit a request for defense and indemnification to Line Finders' insurer.  If denied coverage, Line Finders would defend and indemnify Devon.  Both parties would sign the written settlement agreement.  On April 8, Line Finders agreed to these terms and invited Devon to prepare a draft settlement agreement for review.

Devon prepared a draft.  The parties modified it over the next several weeks. On May 21, 2021, Devon sent Line Finders the settlement agreement.  That same day, Line Finders' attorney responded, "The settlement agreement looks fine.  Please

send me an execution version and I will procure signature." *Id.* at 142.  Devon did not immediately send an execution version to Line Finders, however, and on June 9, Devon received a demand for compensation from Mr. Elsasser, the second Line Finders employee injured in the explosion.  Two days later, on June 11, Devon signed the settlement agreement, and on June 17, sent it to Line Finders for execution with Mr. Elsasser's demand attached.  The parties later tendered Mr. Elsasser's demand to the insurer, but Line Finders never signed the settlement agreement.

Devon moved the district court to enforce the settlement agreement and enter judgment on its claim for declaratory relief.  Line Finders objected, arguing (1) it never signed the settlement agreement, which was contingent on mutual execution, and (2) the settlement agreement was premised on a mistake and fraud because Line Finders relied on the fact that Mr. Elsasser had not made a demand, which Devon failed to disclose immediately.  Devon disputed both arguments, contending (1) the settlement agreement superseded all prior understandings and did not require signatures, and (2) there was no mistake because the settlement agreement expressly contemplated that both Mr. Murschel and Mr. Elsasser could advance their claims, nor was there fraud because the parties negotiated, and Line Finders accepted, the settlement agreement before Mr. Elsasser submitted his demand.

The district court enforced the settlement agreement, ruling that Line Finders' counsel accepted the settlement agreement on May 21, and nothing in the settlement agreement required mutual execution.  The court also determined there was no mistake of fact because Line Finders understood it was possible Mr. Elsasser could

3

pursue his claims, which was expressly contemplated in the settlement agreement. Nor was there fraud, the court concluded, because Line Finders accepted the settlement agreement on May 21 before Devon received Mr. Elsasser's demand on June 9. Thus, the district court recorded a journal entry of judgment in favor of Devon on its claim for declaratory relief. The district court also granted Devon's motion to dismiss its remaining claims and awarded Devon attorney fees. Line Finders now appeals the district court's enforcement of the settlement agreement and award of attorney fees.

## II. DISCUSSION

### A. *Settlement Agreement*

### 1. Legal standards

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). State contract law governs issues of formation. *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004). In Oklahoma, whether there has been a meeting of the minds to form a settlement agreement is a question of fact. *Gomes v. Hameed*, 184 P.3d 479, 485 (Okla. 2008). Thus, although we generally "review the [district] court's approval of the settlement agreement for an abuse of discretion," *Hardage*, 982 F.2d at 1495, we review the district court's ultimate finding that the parties reached a binding settlement agreement for clear error, *see Shoels*, 375 F.3d at 1056.

Under Oklahoma law, "[a] settlement agreement is an oral or written contract between the parties. As such, it is subject to the rules of offer and acceptance and of mutual assent which control any issue of contract formation." *In re De-Annexation of Certain Real Property from City of Seminole*, 204 P.3d 87, 89 (Okla. 2009) (citation omitted). "[A]n acceptance will not bind the offeror unless it is unconditional, identical to the offer, and does not modify, delete or introduce any new terms into the offer." *Id.* (quotations omitted). Settlement agreements are generally favored and "should not be set aside absent fraud, duress, undue influence, or mistake." *Vela v. Hope Lumber & Supply Co.*, 966 P.2d 1196, 1198 (Okla. Civ. App. 1998).

**2. Analysis**

Line Finders contends the district court erred in enforcing the settlement agreement because (a) it was not signed by both parties, (b) it was premised on a mistake of fact and fraud, and (c) the district court failed to hold an evidentiary hearing. We reject all of these arguments.

*a. Signatures*

Relying on Devon's counter-offer from April 7, which proposed that any settlement agreement be signed by both parties, Line Finders contends that mutual execution was a condition precedent that was unsatisfied because Line Finders never signed the settlement agreement. This argument fails because the parties are not bound by the terms of Devon's April 7 counter-offer. Line Finders agreed to those terms but invited Devon to draft a proposed settlement agreement that the parties

5

proceeded to modify until Line Finders accepted the final version on May 21. *See* Aplt. App. at 142-46 (email exchanges discussing modifications). The modifications prevented the parties from being bound until Line Finders accepted the settlement agreement on May 21. *See In re De-Annexation of Certain Real Property*, 204 P.3d at 89. And nothing in the May 21 settlement agreement requires mutual execution.

Line Finders insists that when its attorney accepted the settlement agreement, he expressly stated he would "procure [a] signature." Aplt. App. at 142. But it was Line Finders' acceptance of the settlement agreement that was binding, not counsel's procurement of a signature. *See E. Cent. Okla. Elec. Coop., Inc. v. Okla. Gas & Elec. Co.*, 505 P.2d 1324, 1328 (Okla. 1973) ("An agreement to make and execute a certain written agreement, the terms of which are mutually understood and agreed on, is in all respects as valid and obligatory as the written contract itself would be if executed." (quotations omitted)); *see also* 2 Williston on Contracts § 6:44 (4th ed. May 2022 update) ("[A]ny written contract, though signed by only one party, will bind the other if he or she accepts the writing."). Indeed, "a contract becomes binding where it is executed by one party, is forwarded to the other for execution or approval, is received and retained by the latter but never formally signed or approved by him, and both parties act in reliance upon it as a valid contract." *J.P.C. Petroleum Corp. v. Vulcan Steel Tank Corp.*, 118 F.2d 713, 716 (10th Cir. 1941) (applying Oklahoma law).

Here, after Line Finders accepted the settlement agreement, Devon signed it and sent it to Line Finders for execution. Though Line Finders did not sign it, the

6

parties thereafter jointly tendered Mr. Elsasser's demand to the insurer as specified in the settlement agreement. Under these circumstances, notwithstanding Line Finders' failure to sign, the settlement agreement was binding.[1]

### b. Mistake & Fraud

Line Finders contends the settlement agreement was predicated on a mistake of fact and fraud. Line Finders asserts (1) it accepted the settlement agreement because it mistakenly believed Mr. Elsasser would not make a demand; and (2) Devon knew of Mr. Elsasser's demand before it signed the settlement agreement on June 11, and its failure to timely disclose that fact constitutes constructive fraud.

#### (1) Mistake of fact

A unilateral mistake of fact as to a material term of a contract may be grounds for rescission. *See Watkins v. Grady Cnty. Soil & Water Conservation Dist.*, 438 P.2d 491, 495 (Okla. 1968). But a unilateral mistake rarely warrants recission unless "the 'mistake' goes to a material term of the agreement itself"—that is, "[w]hen the language of the contract contains a latent ambiguity and one of the parties is in fact assenting to something different from what the other party agrees to." *Shoels*, 375 F.3d at 1066-67.

---

[1] Line Finders denies that it jointly tendered Elsasser's demand to its insurer "in accordance with the terms of the Settlement Agreement," but it admits that it jointly tendered the demand to the insurer. Aplt. App. at 155, ¶ 16 (quotations omitted). And the settlement agreement states that "[i]n the event Marcus Murschel or Michael El[s]asser takes any action to advance his claim against Devon, the Parties will jointly submit a claim to [the insurer] to defend, indemnify, and hold harmless Devon against such claim." *Id.* at 126, ¶ 4.

Line Finders suggests it made "a unilateral mistake of fact going to the essence of the contract" by believing Mr. Elsasser would not submit a demand. Aplt. Opening Br. at 18 (brackets and quotations omitted). But it does not identify any latent ambiguity in the settlement agreement underlying its mistaken belief, perhaps because the agreement expressly recognized the possibility that Mr. Elsasser *could* make a demand, and the agreement set forth the parties' obligations if he did:

> In the event Marcus Murschel or Michael El[s]asser takes any action to advance his claim against Devon, the Parties will jointly submit a claim to [the insurer] to defend, indemnify, and hold harmless Devon against such claim. If [the insurer] does not promptly and unequivocally assume the defense and agree to indemnify Devon . . . then [Line Finders] promptly will defend and indemnify Devon . . . .

Aplt. App. at 126, ¶ 4. Because Line Finders' alleged mistaken belief does not go to a material term of the settlement agreement, it does not fall under the rule allowing for rescission based on a unilateral mistake.

Indeed, Line Finders argues it mistakenly assumed Mr. Elsasser would not make a demand because he had not yet made a demand, and that Devon knew about the demand when it signed the settlement agreement.[2] In the district court, Line Finders explained that when it agreed to Devon's counter-offer on April 8:

> Marcus Murschel had taken no action on his claim for a year and Michael Elsasser had not made a demand, despite the fact that the [explosion] had occurred two-and-a-half years previously. Therefore, Line Finders felt comfortable with the concept that, if Murschel or Elsasser took steps to advance their claims and further if the parties'

---

[2] Line Finders' brief on appeal is vague on this point, stating that "whereas Mr. Elsasser had not asserted his claim at all when the [settlement agreement] was first transmitted to Line Finders, he had filed a demand two days before Devon executed the [settlement agreement]." Aplt. Opening Br. at 16-17.

insurer denied coverage, then Line Finders would defend and indemnify Devon. *The likelihood that either Murschel or Elsasser would seek to prosecute a claim seemed remote at the time.*

Out of the blue, however, Elsasser made a demand on Devon through counsel on June 9th. . . . Given this fundamental change of essential facts, Line Finders did not sign the proposed final settlement agreement.

Aplt. App. at 152 (emphasis added).

The problem, though, is that in the interim—between April 8 and June 9—Line Finders had accepted the settlement agreement on May 21, fully recognizing that Mr. Elsasser could make a demand, which he did on June 9. Thus, Line Finders was already bound by the settlement agreement, which expressly contemplated that Mr. Elsasser could make a demand. Line Finders may not rescind or repudiate the settlement agreement simply because things did not turn out the way it hoped they would. *See* 27 Williston on Contracts § 70:8 (4th ed. May 2022 update) ("Avoidance of a contract is not permitted just because one party is disappointed in the hope that the facts accord with his wishes."). It is irrelevant that Devon signed the settlement agreement on June 11 knowing Mr. Elsasser had made a demand because, again, by then the parties had already reached the settlement agreement, which memorialized their shared understanding that Mr. Elsasser could pursue his claims.

(2) Fraud

Line Finders also contends Devon's failure to promptly disclose the Elsasser demand constitutes constructive fraud. Although Line Finders does not expressly characterize this argument as alleging fraud in the inducement, it relies on authority

evaluating a claim of fraud in the inducement based on non-disclosure of material facts, *see Sutton v. David Stanley Chevrolet, Inc.*, 475 P.3d 847, 852-54 (Okla. 2020), and contends that "[c]ontracts executed because of fraud may be rescinded," Aplt. Opening Br. at 19. According to Line Finders, Devon had a duty to promptly disclose Mr. Elsasser's demand under the MSSA and its failure to do so justifies rescission of the settlement agreement.[3]

Fraud in the inducement is a "misrepresentation as to the terms, quality or other aspects of a contractual relation, venture or other transaction that leads a person to agree to enter into the transaction with a false impression or understanding of the risks, duties, or obligations she has undertaken." *Harkrider v. Posey*, 24 P.3d 821, 827 (Okla. 2000) (quotations omitted). If a party's consent was induced by fraud, rescission may be appropriate. *See* Okla. Stat. tit. 15, § 233(1). But "[a] contract voidable for fraud in the inducement creates a valid contractual relationship . . . until the parties are relieved of their obligation by a decree of recission." *Harkrider*, 24 P.3d at 827.

Line Finders was not fraudulently induced into accepting the settlement agreement. Line Finders agreed to the settlement terms because, although Mr. Elsasser could pursue his claims, it apparently thought he would not. Operating under this assessment, Line Finders accepted the settlement agreement on May 21.

---

[3] To be clear, the relevant contract here is the settlement agreement, not the MSSA. Although Line Finders cites the MSSA as the source of Devon's duty to promptly disclose the Elsasser demand, the question is whether the failure to disclose the demand induced Line Finders to accept the settlement agreement.

At that time, Mr. Elsasser had not yet made a demand, so Devon could not have misrepresented whether he would. Indeed, Devon did not receive Mr. Elsasser's demand until June 9. Given this chronology, Line Finders' assertion of fraud is meritless.

### c. Evidentiary hearing

Line Finders also argues that the district court should have held an evidentiary hearing to make factual findings necessary to determine whether there was a valid acceptance of the settlement agreement or fraud. "[W]here material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Hardage*, 982 F.2d at 1496; *see Russell v. Bd. of Cnty. Comm'rs*, 1 P.3d 442, 445 (Okla. Civ. App. 2000) ("When the terms of the settlement agreement are disputed, the trial court should . . . conduct an evidentiary hearing."). An evidentiary hearing also is appropriate to evaluate fraud in the inducement. *See, e.g.*, *Hai v. Baptist Healthcare of Okla.*, 230 P.3d 914, 919 (Okla. Civ. App. 2009). But "[i]n the absence of fraud, mistake, or accident, Oklahoma law is clear:

> [w]here a contract is complete in itself and, as viewed in its entirety, is unambiguous, its language is the only legitimate evidence of what the parties intended. The intention of the parties cannot be determined from the surrounding circumstances, but must be gathered from a four-corners' examination of the contractual instrument in question."

*Gatz v. Sw. Bank of Omaha*, 836 F.2d 1089, 1095 (8th Cir. 1988) (quoting *Mercury Inv. Co. v. F.W. Woolworth Co.*, 706 P.2d 523, 529 (Okla. 1985)).

We have already rejected Line Finders' allegations of mistake and fraud.  The record shows there was no mistake because before it accepted the settlement agreement, Line Finders recognized that Mr. Elsasser could pursue his claim.  Nor was there fraud because Devon did not receive Mr. Elsasser's demand until after Line Finders accepted the settlement agreement.  An evidentiary hearing was not needed to assess the existence of mistake or fraud.

Similarly, no evidentiary hearing was needed to assess the validity of the parties' acceptance of the settlement agreement.  Line Finders agrees it "had no further revisions to the Settlement Agreement" as of May 21, Aplt. App. at 154, and the record clearly shows it accepted the settlement agreement on that date.  Although Line Finders disputes the legal implications of not signing the agreement, we resolved that issue above as a matter of law.

Line Finders insists our decision in *Hardage* required an evidentiary hearing because the parties here "disputed offer and acceptance."  Aplt. Br. at 20.  Likening the circumstances in this case to those in *Hardage*, Line Finders asserts there was an insufficient factual foundation for the district court to determine the parties' mutual assent to the settlement agreement because "'the court failed to receive sworn testimony, subject to cross-examination, or sworn affidavits [or briefing] on this formation issue.'"  *Id.* at 21 (quoting *Hardage*, 982 F.2d at 1497).  Contrary to Line Finders' assertion, however, *Hardage* is distinguishable and does not require a different result.

In *Hardage*, the district court enforced a putative settlement agreement despite conflicting testimony from the lawyers involved in settlement negotiations as to whether there was a valid agreement. 982 F.2d at 1496. We remanded for an evidentiary hearing because the conflicting representations of counsel established a material factual dispute as to whether a settlement agreement was reached. *See id.* at 1497. We said that the district court received no sworn testimony subject to cross-examination, nor did the court have before it any briefing or affidavits, leaving an insufficient factual foundation for the court's conclusion. *See id.* at 1496-97.

In contrast to *Hardage*, there is no such material factual dispute here. Indeed, there are no conflicting factual representations from counsel as to whether there was a valid agreement. Instead, counsel dispute the legal implications of the parties' conduct, which is plainly evidenced in the record. Based on that evidence, which provides an adequate factual foundation, the district court enforced the settlement agreement after receiving full briefing from the parties. Given these distinguishing features, Line Finders' reliance on *Hardage* is misplaced.

### B.  Attorney Fees

Line Finders appeals the district court's award of attorney fees to Devon under the settlement agreement. The settlement agreement contained the following fee provision: "If any Party *asserts a claim* against another Party to enforce the terms and conditions of this agreement in any litigation, then the prevailing party shall be entitled to recover its reasonable attorneys' fees, costs, and expense from the non-prevailing party." Aplt. App. at 127, ¶ 5 (emphasis added). Line Finders

13

contends this provision is inapplicable because Devon did not file a *claim*, but instead filed a *motion* to enforce the settlement agreement.[4]

We review the reasonableness of a fee award for abuse of discretion. We review the interpretation of a contractual fee award de novo. *See Wiggin Props., LLC v. ARCO Bldg., LLC*, 510 P.3d 1274, 1280 (Okla. Civ. App. 2021).

We agree with the district court that Devon's motion to enforce the settlement agreement was a "claim." "[W]ords in a contract are to be understood in their ordinary sense unless used by the parties in a technical sense, or unless a special meaning is given to them by usage." *Koch Fuels, Inc. v. State ex rel. Okla. Tax Comm'n*, 862 P.2d 471, 475 (Okla. 1993); *see also* 11 Williston on Contracts § 32:3 (4th ed. May 2022 update) ("The plain, common, or normal meaning of language will be given to the words of a contract unless the circumstances show that in a particular case a special meaning should be attached to them."). The court correctly observed that the plain meaning of a "claim" is "'the assertion of an existing right.'" Aplt. App. at 222 (quoting Black's Law Dictionary (11th ed. 2019) (brackets omitted)). Devon's motion to enforce asserted its rights under the settlement agreement. It therefore qualifies as a "claim," entitling Devon to its reasonable attorney fees.

Although Line Finders urges us to interpret "claim" in a technical sense, its argument fails. According to Line Finders, a "claim" is "a cause of action submitted

---

[4] Line Finders alternatively argued in district court that the fee request should be reduced as excessive and because counsel engaged in block-billing. The court agreed that the use of block-billing warranted a reduction. It reduced the fee request by 15% and awarded $9,962.50.

in a discrete set of documents." Aplt. Opening Br. at 24. Those "documents," Line Finders explains, are pleadings enumerated under Federal Rule of Civil Procedure 7(a). Line Finders reasons that a pleading "'states a claim for relief,'" and only a cause of action contained in a pleading qualifies as a "claim." Aplt. Opening Br. at 24 (quoting Fed. R. Civ. P. 8(a)). But there is no indication the parties used the word "claim" in this technical sense in the settlement agreement. The district court did not err in its interpretation of the settlement agreement's fee provision.

### III. CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge