OSCN Found Document:Question Submitted by: The Honorable Avery Frix, Oklahoma State Senate, District 9

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 Question Submitted by: The Honorable Avery Frix, Oklahoma State Senate, District 9
2025 OK AG 7
Decided: 06/09/2025
OKLAHOMA ATTORNEY GENERAL OPINIONS
Cite as: 2025 OK AG 7, __ P.3d __

 

¶0 This office has received your request for an Attorney General Opinion in which you ask, in effect, the following question:

Does the April 29, 2025, execution of Oklahoma's model gaming compact by the United Keetoowah Band of Cherokee Indians in Oklahoma (the "UKB") create a valid agreement between the State of Oklahoma and the UKB, or was Oklahoma's codified model gaming compact offer (codified at 3A O.S.2021, § 280

I.
Summary
¶1 In 2004, Oklahoma voters approved State Question 712, enacting the State-Tribal Gaming Act ("STGA"). Through the STGA, Oklahoma offered a model tribal gaming compact (the "Model Compact") to all federally recognized Indian tribes. The Model Compact, codified at title 3A, section 281(15)(C) of the Oklahoma Statutes, clearly provides that its term ended on January 1, 2020. After January 1, 2020, no federally recognized Tribe in Oklahoma could execute the Model Compact and enter a valid gaming compact with the State of Oklahoma without further action from the Joint Committee on State-Tribal Relations ("Joint Committee"). The automatic renewal provisions of the STGA and Model Compact provide no relief here as they only apply to gaming compacts in effect on January 1, 2020.
¶2 Because the UKB did not have a Model Compact in place on January 1, 2020, the STGA's renewal provision precludes the UKB's attempt to enter the Model Compact on April 29, 2025. Under current law, a new compact may be entered after January 1, 2020, but it must be approved by the Joint Committee as provided in title 74, section 1221(C) of the Oklahoma Statutes.
II.
Background

A. The Indian Gaming Regulatory Act ("IGRA")
¶3 The Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701--2721 ("IGRA"), governs gaming activities on Indian lands, as defined by Section 2703(4). Relevant here, IGRA states that "Class III gaming activities shall be lawful on Indian lands only if such activities are . . . (C) conducted in conformance with a Tribal-State compact entered by the Indian tribe and the State under [Section 2710(d)(3)] that is in effect." 25 U.S.C. § 2710(d)(1). IGRA also requires that a compact be submitted to the Secretary of the Interior for review and establishes that a compact is effective when notice of the Secretary's approval is published in the Federal Register. 25 U.S.C. § 2710(d)(3)(B). [1] Section 2710(d)(8)(A) authorizes the Secretary to approve "any Tribal-State compact entered into between an Indian tribe and a State governing gaming on Indian lands of such Indian tribe." [2] 25 U.S.C. § 2710(d)(8)(B); 34 C.F.R. § 293.15(a)(1). Once effective, Class III gaming on the Indian lands of the compacting Tribe is "fully subject to the terms and conditions of the Tribal-State compact." 25 U.S.C. § 2710(d)(2)(C).

B. The State-Tribal Gaming Act 
¶4 In 2004, Oklahoma voters approved State Question 712, enacting the STGA. [3] See 2004 Okla. Sess. Laws ch. 316 (codified at 3A O.S.2021, §§ 2613A O.S.2021, § 280Sheffer v. Buffalo Run Casino, PTE, Ind., 2013 OK 77315 P.3d 3593A O.S.2021, § 280Treat II, 2021 OK 3481 P.3d 240Id.
¶5 Oklahoma law historically prohibited gambling, but the STGA authorizes "the conducting of and the participation in any game authorized by the model compact . . . when played pursuant to a compact which has become effective." 3A O.S.2021, § 280see also id. § 262(A); and 21 O.S.2021, §§ 9413A O.S.2021, § 262[4] Through the STGA, the Model Compact sets forth, among other things, standards and regulations for conducting games, oversight and monitoring mechanisms, provisions for recordkeeping and auditing, licensing, dispute resolution, and authorized locations for gaming facilities. Id. § 281. Like the rest of the STGA, the Model Compact permits a compacting tribe to conduct "covered game[s]" only in conformity with the compact. More precisely, a compacting tribe may only conduct those specifically enumerated games and games "approved by legislation for use by any person or entity" or "approved by amendment of the State-Tribal Gaming Act." Id. § 281, Parts 3(5) and 4(A).

C. Developments and litigation relating to Oklahoma tribal gaming compacts.
¶6 Of the 38 federally recognized Indian Tribes in Oklahoma, 35 accepted the State's offer and entered the Model Compact. [5] For 14 years, state-tribal compacts existed without significant interruption. However, since 2019 several disputes have resulted in litigation.
¶7 First, in 2019 the Governor asserted that the existing compacts would no longer be effective after January 1, 2020. In response, numerous tribes filed suit, seeking declaratory relief to acknowledge the continuing validity of the compacts after January 1, 2020. Cherokee Nation v. Stitt, 475 F. SupP.3d 1277 (W.D. Okla. 2020). The district court held that, per their terms, the compacts automatically renewed for additional 15-year terms on January 1, 2020. Id. The district court also denied the UKB's attempt to intervene in the case because the UKB did not have "an approved compact." Cherokee Nation v. Stitt, 475 F.Supp.3d 1283.
¶8 Second, in 2020 the Oklahoma Supreme Court addressed whether two tribal gaming compacts negotiated and entered by the Governor were binding on the State when the types of gaming authorized under the compacts were not legal under Oklahoma law. Treat v. Stitt, 2020 OK 64473 P.3d 43(Treat I). The court held that the compacts were invalid because "[t]he legislative branch sets the policy of the State" and "the Governor must negotiate the compacts within the bounds of the laws enacted by the Legislature . . . ." Id. ¶¶ 4--5, 473 P.2d at 44. Shortly after Treat I, the court revisited the issue and again determined the Governor invalidly negotiated and entered new tribal gaming compacts, including one with the UKB. Treat v. Stitt, 2021 OK 3481 P.3d 240Treat II). When a tribal gaming compact contains provisions different than those in the Model Compact, the court concluded that the Governor must either adhere to the parameters of the Model Compact or obtain approval of the Joint Committee. Id. ¶¶ 6, 12, 481 P.3d at 242, 244. Following Treat II, the Governor and tribes sought approval from the Joint Committee, but the compacts were denied. [6]
¶9 On April 29, 2025, the UKB signed and submitted the Model Compact[7] to the Department of the Interior for the Secretary's approval. Your question requires determining whether (1) the UKB lawfully accepted the State's offer to enter the Model Compact, or (2) the UKB's April 29, 2025, compact properly utilized the statutory authority conferred under title 74, section 1221(C) of the Oklahoma Statutes, which requires approval by the Joint Committee.
III.
Discussion

Because the State's Model Compact offer was not valid on April 29, 2025, the UKB does not have a lawful State-Tribal Compact.

1. Oklahoma's offer to its federally recognized tribes to enter the Model Compact expired before the UKB's purported acceptance on April 29, 2025. 
¶10 A state-tribal gaming compact is "an intergovernmental agreement executed between Tribal and State governments under IGRA that establishes between the parties the terms and conditions of the operation and regulation of the Tribe's class III gaming activities. Accordingly, and though they are not ordinary private party contracts . . . gaming compacts are a 'form of a contract.'" Cherokee Nation, 475 F. SupP.3d 1277, 1281 (W.D. Okla. 2020) (citing Citizen Potawatomi Nation v. Oklahoma, 881 F.3d 1226, 1238-39 (10th Cir. 2018)); see also Treat II, 2021 OK 3Griffith v. Choctaw Casino of Pocola, 2009 OK 51230 P.3d 488
¶11 Generally, "principles of federal contract law" govern the formation and interpretation of compacts, and where the terms of a contract are unambiguous, the four corners of the compact encompasses the parties' intent. Cherokee Nation, 475 F. SupP.3d at 1281 (citing Citizen Potawatomi Nation, 881 F.3d at 1238-39). [8] However, "whether a state has validly bound itself to a compact" is controlled by state law. Citizen Potawatomi Nation, 881 F.3d at 1239 n.18 (quoting Pueblo of Santa Ana v. Kelly, 104 F.3d 1546, 1557 (10th Cir. 1997)). Therefore, determining whether the Model Compact signed by the UKB is valid requires this office to review the compact using both federal and state law. Cherokee Nation, 475 F. SupP.3d at 1281.
¶12 A qualifying tribe could only enter the Model Compact with the State by accepting the State's offer. [9] See 3A O.S.2021, § 281Treat II, 2021 OK 33A O.S.2021, § 281[10] 15 O.S.2021, § 73
2. The automatic renewal provisions of the Model Compact are inapplicable as to the UKB's purported acceptance.
¶13 In addition to the initial term, a valid compact automatically renews for "successive additional fifteen-year terms" if certain conditions are met. 3A O.S.2021, § 281
organization licensees or others are authorized to conduct electronic gaming in any form other than pari-mutuel wagering on live horse racing pursuant to any governmental action of the state or court order following the effective date of this Compact, the Compact shall automatically renew for successive additional fifteen-year terms. 
Id. For two reasons, the renewal provision applies only to compacts in effect as of January 1, 2020. First, "Part 15(B) plainly states the term of the Compacts: they 'expire[d] on January 1, 2020.'" Cherokee Nation, 475 F. SupP.3d 1277 at 1281. Therefore, only compacts in effect on January 1, 2020, (i.e., signed by a tribe and effective under IGRA, see n.1 and accompanying text) can renew under this provision. The UKB did not have a compact in effect on January 1, 2020. Therefore, the renewal provision is inoperable and may not validate a compact executed by the UKB on April 29, 2025. [11]
¶14 Second, to renew, on or before January 1, 2020, "organization licensees [or others] . . . [must] have been authorized, and [must be] currently authorized, to conduct electronic gaming . . . 'pursuant to any governmental action of the [S]tate' taken after the effect date[] of the Compact[]." Cherokee Nation, 475 F. Supp.3d at 1281-82. But it logically follows that a compact must be effective before January 1, 2020, for an authorization to take place "following" or "after" the effective date of an effective compact. Otherwise, the operative renewal language "taken after the effective date of the Compact" is rendered superfluous. And no one is suggesting that the purported UKB compact was in effect on the pertinent statutory date--January 1, 2020. Unequivocally, the "effective date" of the purported compact has not commenced since the Secretary has not approved and published it in the Federal Register. Additionally, the UKB readily admits that it did not enter the Model Compact by January 1, 2020. [12] Accordingly, the automatic renewal provision of the Model Compact are inapplicable as to the UKB's purported acceptance.
3. The UKB did not accept the Model Compact.
¶15 The UKB's purported acceptance of the Model Compact on April 29, 2025 is void and without effect because the State's offer expired on January 1, 2020--the expiration date of the Model Compact's initial term. In fact, the signed compact submitted to the Office of Indian Gaming includes the expiration date in title 3A, section 281, Part 15(B) of the Oklahoma Statutes. [13] Although the UKB did not strike through or otherwise substantively change any terms prior to signing the Model Compact on April 29, 2025, attempting to create a binding agreement between the UKB and the State of Oklahoma by simply signing the Model Compact in its original form after January 1, 2020, contravenes Oklahoma law. Fundamentally, "a contract is an agreement to do or not do a certain thing." 15 O.S.2021, § 115 O.S.2021, §§ 2In re De-Annexation of Certain Real Property from City of Seminole, 2009 OK 18[14] Here, no mutual consent existed on April 29, 2025, as the Model Compact's term expired five years before the purported acceptance.

B. The UKB's pathway to a valid gaming compact under Oklahoma law runs through the Joint Committee.
¶16 In striking its prior compact effort, the Oklahoma Supreme Court pointed to two methods by which tribal gaming compacts can be entered into: "(1) via the Model Compact, or (2) via the general statutory authority conferred under 74 O.S. Supp. 2012, § 1221(C), which requires the approval of the Joint Committee . . . when a tribal gaming compact contains provisions different from those in the Model Compact." Treat II, 2021 OK at ¶ 6, 481 P.3d at 242. While the window for accepting the Model Compact has closed, any option available to the UKB under 74 O.S. Supp. 2012, § 1221(C) presumably remains available. But cf. Treat II, 2021 OK at ¶ 3, 481 P.3d at 249 (Rowe, J., concurring in result) (observing Oklahoma's constitutional non-delegation doctrine would preclude the Joint Committee from "approv[ing] compacts that operate as amendments to Oklahoma law"); see also Letter from Oklahoma Attorney General Gentner Drummond to Members of the Joint Committee, date October 23, 2023 (highlighting same) (on file with author). This office cannot find any evidence that the Joint Committee approved the purported compact executed by the UKB on April 29, 2025, much less that the Joint Committee approved it "prior to submitting the Compact to the Department of the Interior" the next day. Treat II, 2021 OK at ¶ 10, 481 P3d at 249. Accordingly, the UKB has not entered a valid gaming compact with the State of Oklahoma.

¶17 It is, therefore, the official Opinion of the Attorney General that:
The April 29, 2025, execution of Oklahoma's statutory model gaming compact by the United Keetoowah Band of Cherokee Indians in Oklahoma did not create a valid agreement between the State of Oklahoma and the UKB. The Model Compact term expired on January 1, 2020. Additionally, the renewal provision provided in the Model Compact under the State-Tribal Gaming Act has no effect on the purported compact signed on April 29, 2025, because the UKB did not have a compact in effect as of January 1, 2020. Finally, the UKB did not seek approval of the compact which the UKB signed on April 29, 2025, by the Joint Committee on State-Tribal Relations. Thus, the UKB has not entered a valid gaming compact with the State of Oklahoma. 

Gentner Drummond
Attorney General of Oklahoma

Cheryl Dixon
Deputy General Counsel

FOOTNOTES

[1] If the Secretary does not act within forty-five days, the compact is deemed approved and shall then be published in the Federal Register. 25 U.S.C. § 2710(d)(8)(C)--(D).
 

[2] Whereas the IGRA uses the term "may," it has been held that the Secretary "must" disapprove a compact if it would violate any of the limitations in 25 U.S.C. § 2710(d)(8). Amador County v. Salazar, 640 F.3d 373, 381 (D.C. Cir. 2011).

[3] Oklahoma Secretary of State, State Question 712, https://www.sos.ok.gov/documents/questions/712.pdf (last visited June 9, 2025).

[4] In 2018, the Legislature authorized tribes to enter supplements to the Model Compact that authorized non-house-banked table games. House Bill 3375, 2018 Okla. Sess. Laws ch. 11, § 2 (codified at 3A O.S.2021, § 280.1

[5] Oklahoma Office of Management and Enterprise Services, Compacted Tribes, https://oklahoma.gov/omes/gaming-compliance-unit/compacted-tribes.html (last visited June 4, 2025).

[6] See Janelle Stecklein, Lawmakers reject gaming compacts for two small Oklahoma tribes, OklahomaVoice.com (Oct. 25, 2023), https://oklahomavoice.com/2023/10/25/lawmakers-reject-new-logan-oklahoma-county-casino-compacts/.

[7] Model Tribal Gaming Compact Between the United Keetoowah Band of Cherokee Indians and the State of Oklahoma, Apr. 29, 2025 (received by the Off. of Indian Gaming on Apr. 30, 2025) (on file with author).

[8] The Oklahoma Supreme Court has determined that "the Model Tribal Gaming Compact may not be viewed as an ordinary private contract because it is a voter-approved statute," and therefore, "must be interpreted by use of canons of statutory construction." Griffith, ¶ 7, 230 P.3d at 491. While principles of federal contract law and canons of statutory construction are not necessarily coterminous, using the latter leads to the same result. In either case, a reviewing court must interpret unambiguous words as written.

[9] The model compact offer was made "to all federally recognized Indian tribes as identified in the Federal Register within this state that own or are the beneficial owners of Indian lands as defined by the Indian Gaming Regulatory Act, 25 U.S.C. Section 2703(4), and over which the tribe has jurisdiction as recognized by the Secretary of the Interior and is a part of the tribe's 'Indian reservation' as defined in 25 C.F.R. Part 151.2 or has been acquired pursuant to 25 C.F.R. Part 151...." 3A O.S.2021, §280

[10] See also Pueblo of Santa Ana, 104 F.3d at 1559 (entering a compact without authority renders the agreement void and without effect, regardless of whether the Secretary approves it); Great Am. Reserve Ins. Co. of Dallas v. Strain, 1962 OK 241377 P.2d 583

[11] As mentioned previously, the UKB attempted to enter another compact on July 1, 2020. However, that compact itself was six-months beyond the initial term of the Model Compact and, like the case here, would not have been subject to the automatic renewal.

[12] Mot. of United Keetoowah Band of Cherokee Indians in Okla. to intervene & Br. in Supp. at 2, Cherokee Nation v. Stitt, No. 5: 19-cv-1198-D (W.D. Okla. filed Feb. 14, 2020), ECF No. 56 ("The Band's Compact is awaiting approval by the Department of the Interior."); see also Reply of United Keetoowah Band of Cherokee Indians in Okla. in Supp. of its Mot. to Intervene at 2-3, Cherokee Nation v. Stitt, No. CIV-19-1198-D (W.D. Okla. filed Feb. 25, 2020), ECF No. 81 (acknowledging that the UKB did not have a compact currently in effect on February 20, 2020, at the time of the filing). See also Cherokee Nation v. Stitt, 2020 WL 963380, at *1 n.2 (denying motions to intervene filed by the United Keetoowah Band of Cherokee Indians in Oklahoma and the Kialegee Tribal Town and recognizing the UKB "lacks an approved compact.").

[13] See supra footnote 6.

[14] See also Nabob Oil Co. v. Bay State Oil & Gas Co., 1953 OK 59255 P.2d 513Hartzell v. Choctaw Lumber Co., 22 P.2d 387

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105